Exhibit "C" "During in relation to" prong.

Motion to suppress pg.26,47,48

S.H

```
 1  A.  Yes, ma'am.
 2  Q.  On how many occasions, to your knowledge?
X3  A.  Within the last couple of weeks leading up to this, at least
X4      six or seven times.  Within the last three months, at least 30
 5      times.
 6  Q.  Could you please tell the Court what different circumstance
 7      occurred on December 6th, 2002, that caused you to approach
 8      Mr. Jefferson and the fact that you did not on the other
 9      occasions?
10  A.  On the other occasions, at that particular business there
11      was never no one in the business.  It was never open.  There w
12      never cars in front or persons inside the business.  On that
13      particular occasion, what led to us making contact with
14      Mr. Jefferson is that -- his pulling up in the vehicle, getti
15      into the one car, seeing us, and not getting in that car and
16      trying to make it to a second car.  Went to Mr. Jefferson.
17      Tried to approach Mr. Jefferson.  He wouldn't let us approac
18      him by trying to get to the vehicle.  If he had have fleed t
19      other direction or -- you know, it may have been different.
20      he tried to make it to the vehicle, which based on officer
21      safety and, you know, the history of Mr. Jefferson's -- the
22      history I knew of Mr. Jefferson, we made contact with him.
23  Q.  Is it your testimony of the 30 times that surveillance
24      place you never saw Mr. Jefferson?
25  A.  Not at that business.
```

S.H.

1  A.  I want to say it was probably about two or three years old.
2  Maybe not that old.  A young baby, because I found -- I
3  photographed baby items I saw at the house, diapers, bottles.
    THE COURT:  Relevance, Counsel?
4
    MS. REDMOND:  It's beyond the scope of my question.
5
    THE COURT:  Move on.
6
    MS. REDMOND:  Thank you.  Nothing further for this
7
8  witness.
    THE COURT:  Ms. Cooper?
9
    MS. COOPER:  Yes, ma'am.
10
               CROSS-EXAMINATION
11
12 BY MS. COOPER:
13 Q.  Agent Price, you had indicated in your testimony that you
14 had been part of a previous surveillance of Mr. Jefferson; is
15 that correct?
16 A.  Yes, ma'am.
17 Q.  On how many occasions did you surveil Mr. Jefferson?
18 A.  The business or the residence?
19 Q.  Him personally.
20 A.  We had been by -- I hadn't actually seen Mr. Jefferson
21 personally.  We tried to make a drug buy one time, and he w
22 at the residence.  And then we had been by the business se
23 several times.
24 Q.  So this incident at Head to Toe was the first time you
25 your officers had actually made physical contact with him

S H

1  A. Yes, ma'am.
2  Q. Do you have any personal knowledge of any confidential
3  informants who had given information to you about Mr. Jefferson?
4  A. Sergeant Franklin with the Russell County Sheriff's
5  Department --
6  Q. I'm asking you. Do you have any personal contact or
7  information that a confidential informant gave personally to
8  you?
9  A. Yes, ma'am. What I was saying was Sergeant Franklin turned
10 an informant over to us to try to make a buy from Mr. Jefferson
11 Q. Was that successful?
12 A. No.
13 Q. And did you talk with that informant?
14 A. Yes, ma'am, I did.
15 Q. Do you see the picture on the screen that has been admitte
16 into evidence?
17 A. Yes, ma'am, I do.
18 Q. According to the testimony of Mr. Whitten, the vehicle --
19         THE CLERK: Use your finger --
20         MS. COOPER: I'm sorry.
21         THE CLERK: -- on the screen. Just put your finger
22 the screen.
23         MS. COOPER: I apologize.
24 Q. According to Mr. Whitten's testimony -- I've got an arrow
25 there. It may not be exactly correct. But in that vicinity