```
1                IN THE UNITED STATES DISTRICT COURT
                                 FOR
2              THE MIDDLE DISTRICT OF ALABAMA

3

4

5    THE UNITED STATES
         OF AMERICA
6
           vs.                        CRIMINAL ACTION NO.
7                                      03-CR-63
     WENDALL JEFFERSON
8

9

10

11

12

13

14

15                    SENTENCING PROCEEDINGS
16

17

18

19                  *  *  *  *  *  *  *  *  *  *

20

21   BEFORE:         The Hon. Myron H. Thompson

22   HEARD AT:       Montgomery, Alabama

23   HEARD ON:       December 4, 2003

24   APPEARANCES:    Susan Redmond, Esq.

25                   Connie Jo Cooper, Esq.
```

1  WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
   THE HON. MYRON H. THOMPSON ON DECEMBER 4, 2003 AT THE
2  UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4          THE COURT:  The Court calls the case of

5  United States of America v. Wendell Jefferson,

6  criminal action number 03-063.

7          Please have him come forward.

8          MS. COOPER:  You want Mr. Jefferson also,

9  sir?

10          THE COURT: Yes, please.

11          Now this is Mr. Jefferson?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT: Mr. Wendell Jefferson.  And

14  you're here with your attorney, Miss Cooper?

15          MS. COOPER:  Yes, sir.

16          THE COURT: Now, Mr. Jefferson, have you

17  reviewed the Presentence Report, including any

18  revisions that may have been made after the initial

19  disclosure?

20          MS. COOPER:  Yes, sir, he and I have

21  reviewed the Presentence Report.

22          THE COURT: Is that correct, Mr. Jefferson?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT: Was there a plea agreement here?

25          MS. COOPER: Yes, Your Honor.

```
 1              THE COURT: Would you state the plea
 2  agreement.
 3              MS. REDMOND: Judge, Susan Redmond for the
 4  Government.
 5              The plea agreement entered in this case
 6  filed on July 2nd, 2003 is pursuant to 1(C)(1)(a).
 7  The Government's provisions, Your Honor, were that on
 8  entering a plea of guilty by the defendant to all
 9  counts of the indictment -- that's one, two, three,
10  four, five and six -- the Government will agree,
11  pursuant to Rule 1(c)(1)(a), that the defendant's
12  wife, Jennifer Faulk, would not be indicted by the
13  Government for conduct arising out of the indictment.
14              We reserve the right to inform the Court and
15  the Probation Department of all facts pertinent to the
16  sentencing process, including all relevant information
17  concerning the offenses and the sentencing background.
18              The defendant's provisions were to plead
19  guilty to counts one, two, three, four, five and six
20  of the indictment.
21              There was a provision that he did not waive
22  his right to disposition as to the issues raised in
23  the suppression motion.  That recommendation at that
24  time, Your Honor, had not been completed by the Court.
25  We were working on a plea agreement.  And his two
```

```
 1   other provisions were to forfeit any and all property

 2   constituting or derived from any proceeds obtained as

 3   a result of the violations of the indictment, and to

 4   forfeit the firearms and ammunition described within

 5   the counts of the indictment as well, Your Honor.

 6           THE COURT: Okay.  So this is -- This plea

 7   agreement does not require the Court to impose a

 8   specific sentence?

 9           MS. REDMOND: That's correct, Your Honor.

10           THE COURT: Is that correct, Miss Cooper?

11           MS. COOPER:  Judge, that is our

12   understanding.  We did have some objections to that.

13           THE COURT: Right.

14           I understand the Government has no

15   objections?

16           MS. REDMOND: That is correct, Your Honor.

17           THE COURT: And the defendant has one

18   objection?

19           MS. COOPER:  That's correct, Your Honor.

20           THE COURT: And that objection is that

21   because the defendant committed counts four and six

22   simultaneously, count six should not be deemed a

23   successive conviction under 924(C)(1) for sentencing

24   purposes?

25           MS. COOPER:  Yes, sir, that is part of our
```

```
 1  objection.

 2            And one other point that I would like to

 3  make is based upon the written plea agreement, Judge.

 4  Upon execution of the plea agreement, counts four and

 5  six, it states that the sentence would be not less

 6  than five years.  Judge, whether that was

 7  miscommunication between me and Miss Redmond, I wanted

 8  to state for the record that my client, it's my

 9  understanding that his understanding of the plea

10  agreement would be that he took it that those would

11  carry a consecutive sentence -- it was my client's

12  understanding that upon execution of the plea

13  agreement for counts four and six, those two counts

14  would carry a consecutive term to the other counts of

15  between five and ten years and not less than

16  twenty-five years.

17            THE COURT: Okay.  Five and ten years and not

18  less than twenty-five years, is count six.  Count six

19  says it's not less than twenty-five years if it's a

20  subsequent offense.

21            MS. COOPER:  That is what the presentence

22  investigative report states, but that is not what the

23  plea agreement states, Your Honor.

24            THE COURT: I understand that, but you're

25  saying your client understood that it was for both
```

1  counts it would be not less than five to ten years,

2  you said?

3          MS. COOPER:  Yes, sir.  I believe that would

4  be his understanding, after speaking with him.

5          THE COURT: Okay.  So you're saying your

6  client had a misunderstanding?

7          MS. COOPER:  Based upon that, Judge, and I

8  did too.  And perhaps it was part my fault because of

9  miscommunication.

10         And I have also been given the Deal case by

11 Ms. Redmond, which deals specifically with subsequent

12 convictions.  But it was my understanding at the time

13 of the execution of the plea agreement that a

14 twenty-five year mandatory consecutive sentence would

15 not be imposed, that it would be twenty-five and ten

16 years.    {sic}= between 5 - 10 ys

17         And as I said, Judge, the plea agreement

18 states not less than five years for each of those

19 counts.

20         THE COURT: Now I'll hear your arguments as

21 to the objection.  I'll hear from Probation first.

22         THE PROBATION OFFICER:  Excuse me, Your

23 Honor?  I'm sorry.

24         THE COURT: I'll hear your argument as to the

25 defendant's objections.

1          THE PROBATION OFFICER:  Your Honor, it is my

2     understanding the defendant objects to the fact that

3     she was informed, or understood, that there would be a

4     not less than five and a not less than ten year

5     mandatory consecutive term of imprisonment imposed.

6     However, on April 11th of 2003, subsequent to the

7     defendant's arraignment and prior to his change of

8     plea, our office did a probation officer conference

9     guideline estimate, and when I did that I specifically

10    stated that in accordance with count six there would

11    be a twenty-five year or three hundred month

12    consecutive sentence imposed into any other case.

13         Count five stated that there would be a ten

14    year mandatory minimum sentence imposed at that time

15    because during that time I had not verified all the

16    information.  And my understanding at that time, the

17    two weapons that were involved, one being a Tech nine

18    and one being an M eleven, I assumed they were both

19    semiautomatic assault weapons.  So I took the higher

20    estimate at the probation officer conference.

21         When the change of plea occurred,

22    Ms. Redmond and myself met with Miss Cooper and the

23    defendant back in the detention holding cell for the

24    marshals.  And I explained to him that since the

25    United States Department of Alcohol, Tobacco and

1    Firearms had determined one of the weapons not to be a

2    semiautomatic assault weapon, count five would be --

3    count four, I'm sorry, would be a five year

4    consecutive term but count six because it was a

5    subsequent conviction, it would still be a twenty-five

6    year consecutive sentence.  And it was my

7    understanding that they understood that at the change

8    of plea.

9              THE COURT: Miss Cooper?

10              MS. COOPER:  Judge, I made notes at the time

11    of that conference, and I believe this to be even in

12    Mr. Conly's handwriting and part of it in my

13    handwriting that part four initially was a ten year

14    consecutive sentence to any other sentence imposed.

15    And that's been marked down, and written above it is

16    five.

17              Count six was twenty-five years consecutive

18    to any other sentence imposed, and marked out as ten

19    years and place -- in place of twenty-five years is

20    ten years.

21              Additionally, Judge, I believe that this

22    particular case, if we look at the circumstances of

23    the case, the guns and the drugs that were charged to

24    my client were all obtained during one offense date

25    and time. These are not subsequent arrests or

```
 1   subsequent crimes that were committed during a

 2   different date.  And as I said before, Judge, when you

 3   talk about whether it is proper to impose an

 4   additional twenty-five year sentence and you look at

 5   the Deal case from the Supreme Court, that particular

 6   case involving bank robbery was where a gentleman had

 7   committed six different offenses for bank robbery.

 8           In the instant case, here with

 9   Mr. Jefferson, these guns were all obtained on the

10   same date and during the same arrest.

11           THE COURT: So the question is if I overrule

12   your objections, he would be looking at at least three

13   hundred months on count six, which would run

14   consecutive to any other sentence I gave him on the

15   the other counts.

16           MS. COOPER:  Yes, sir, I believe that to be

17   correct.

18           THE COURT: Now I have these motions for

19   downward departure.  How do they play into this?

20           MS. REDMOND: Judge, there is filed by myself

21   a motion for downward departure of three levels based

22   on his substantial assistance to the Government.  And

23   I think I detailed it in the downward departure motion

24   in "ongoing investigations," particularly in the

25   Phenix City area involving firearms and drug dealing.
```

1    They impact in terms of really, Judge, the drugs, and

2    that would be the underlying sentence that would be

3    impacted.

4            I believe I also filed for the additional

5    point for acceptance of responsibility which would all

6    together bring him down six levels as to the guideline

7    ranges.

8            THE COURT: Okay.  And assuming the objection

9    is overruled, that would give him a sentencing range

10   of what?

11           MS. REDMOND: I want to say twenty-six, Your

12   Honor.

13           THE PROBATION OFFICER:  Yes, Your Honor.  If

14   the Court granted the three level downward departure,

15   the new offense level would be twenty-six; based on

16   the criminal history category of three, his new

17   guideline range would be seventy-eight to ninety-seven

18   months with a new fine range of twelve thousand five

19   hundred to five million dollars.

20           THE COURT: Okay.  But what about the

21   consecutive sentence?

22           THE PROBATION OFFICER:  The guidelines, Your

23   Honor, I mean the downward departure motion, from my

24   understanding, only affects the guidelines sentence

25   because she's asking for a three level reduction.  And

1 | what you would do is take it off of the drugs because

2 | there is a ninety-seven months or an original

3 | guideline range of a hundred and eight to a hundred

4 | and thirty-five months to work with.

5 | The motion in accordance with 5K, which I

6 | think it was filed with -- 5K1, only requested a

7 | downward departure of three levels.  That would, in

8 | affect, give the statutory mandatory required

9 | sentences under 18 U.S.C. 924(c).  That's where we

10 | come up with that, Your Honor.

11 | THE COURT: So you're saying what then, as to

12 | the three hundred months?

13 | THE PROBATION OFFICER:  It does not affect

14 | that, no, Your Honor.

15 | THE COURT: What is the defendant's position

16 | as to the application of Deal?

17 | MS. COOPER:  Judge, I believe that Deal

18 | stands for the proposition that in 1993 the Supreme

19 | Court affirmed a case in which a defendant committed

20 | about six bank robberies, and the Court imposed an

21 | additional twenty year sentence in two through five of

22 | those bank robberies, Judge, which resulted in a

23 | sentence of a hundred and five years.

24 | I would submit to this Court that the

25 | distinction, one of the important distinctions between

```
 1   the instant case and the Deal case is that there were
 2   six separate offenses on six separate dates.  And I
 3   submit that that would lead the Supreme Court in
 4   reasoning that the application of the subsequent
 5   offense should be given to the defendant.  Of course
 6   there were three justices in that who disagreed, and
 7   in the dissent strongly stated that the previous
 8   federal law makes clear that the subsequent offense
 9   which describes only those offense committed after a
10   prior conviction has become final.
11          But once again, Judge, I would submit to you
12   that the Deal case is totally different in that that
13   defendant committed six bank robberies on six
14   different occasions, and we're dealing today with one
15   instance, one search and one finding of weapons on one
16   occasion and not more than one.
17          THE COURT: How about there were two caches
18   of drugs, right?
19          MS. COOPER:  There were drugs found in a
20   vehicle driven by my client, Judge.  There were no
21   weapons found on my client or in the vehicle at the
22   time of the arrest.  The weapons were found -- one
23   weapon, I believe, was found in a place of business
24   that his wife ran, and in their home.  Weapons found
25   in the home.  But it was all on the same date and
```

 1  time.  Same arrest.

 2          THE COURT: And drugs were found where, now?

 3          MS. COOPER:  There were drugs found in a

 4  vehicle that my client, that was the largest amount of

 5  drugs that were obtained in a vehicle that my client

 6  was driving on the date of the arrest.  No weapons

 7  or -- no weapons were found in the vehicle that he was

 8  driving, nor were on his person at the time of the

 9  arrest.

10          There was a business his wife was operating

11  in which a weapon was found, and later a search of her

12  home for two weapons I believe, Judge.

13          MS. REDMOND: If I can answer quickly the

14  question I think the Court posed as to just where were

15  the drugs found?  The drugs were found in all three

16  locations.  The car, the business and the home.

17          THE COURT: Okay.  And you're saying that the

18  weapons in the car --

19          MS. REDMOND: Weapons are in the house and in

20  the residence.

21          THE COURT: House and the --

22          MS. REDMOND: I'm sorry.  That's not what I

23  meant.  The residence and the business, Your Honor.

24          THE COURT: Okay.  And count four goes to the

25  drugs found where?  Count four is the firearm

1    possession.  And I assume you're claiming that's

2    connected with the separate drugs?

3              MS. REDMOND: That's the business.

4              THE COURT: And count six?

5              MS. REDMOND: There were two weapons found in

6    the home, one along with drugs.  One of which ends up

7    being an assault weapon.  And so they were grouped

8    together, the two weapons that were found in the home.

9              THE COURT: Okay.

10             MS. COOPER:  Judge, it's my recollection, if

11   I'm correct, that the amount of drugs approximately

12   found in the vehicle was five hundred grams.  The

13   amount of drugs found at the home was sixty-five

14   grams.  And there was no charges of any drugs found in

15   the shop because I think it was a minimal amount of

16   residue, if I'm correct.

17             THE COURT: Well I really see two issues

18   here.  The first one is whether your client should be

19   allowed to withdraw his plea because he had a

20   misunderstanding.  And the second one is whether count

21   six should be treated as a subsequent offense.

22             MS. COOPER:  Yes, Your Honor.

23             THE COURT: Does your client wish to withdraw

24   his plea?  He now understands that he is subject,

25   depending upon the Court's findings, to not less than

1    twenty-five years, and those are consecutive years

2    under count six.  Is he making a claim to withdraw his

3    plea, or not?  I'll hear you as to that.

4            I'm not saying I'm going to allow him to

5    withdraw his plea, I just want to know what his claim

6    is.

7            THE DEFENDANT:  No, sir.

8            MS. COOPER:  No, sir.

9            THE COURT: Pardon me?

10           MS. COOPER:  No, sir.

11           THE COURT: With the understanding that count

12   six does carry a sentence of not less than twenty-five

13   years consecutive to any other sentence you might

14   receive for the other counts, you still wish to

15   continue with your plea?

16           THE DEFENDANT:  Yes, sir.

17           THE COURT: Pardon me?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT: Okay.  Because of the gravity of

20   this decision, I'm going to ask the clerk to swear you

21   in.

22           (Whereupon, the defendant was duly sworn by

23   the courtroom deputy clerk.)

24           THE COURT: Now do you understand that having

25   been sworn, your answers to my questions will subject

1  you to the penalties of perjury or of making a false

2  statement if you fail to answer the questions

3  truthfully?

4  A    Yes, sir.

5         THE COURT: Are you now under the influence

6  of any drugs or alcohol?

7  A    No, sir.

8         THE COURT: Have you recently been

9  hospitalized or treated for any narcotics addiction?

10 A    No, sir.

11        THE COURT: Are you able to read, write and

12 understand the English language?

13 A    Yes, sir.

14        THE COURT: And have you recently seen a

15 physician or a psychiatrist?

16 A    No, sir.

17        THE COURT: Are you suffering from any mental

18 or physical disability?

19 A    No, sir.

20        THE COURT: Now, Miss Cooper, do you have any

21 reason to doubt his competency to reaffirm his plea at

22 this time?

23 A    I do not, Your Honor.

24        THE COURT: Does the Assistant U. S.

25 Attorney?

```
 1              MS. REDMOND: No, sir.

 2              THE COURT: Based upon the representations

 3    made to the Court, the Court finds that the defendant

 4    is competent to reaffirm his guilty plea.

 5              As I stated before, Mr. Jefferson, count six

 6    of the indictment does carry a potential sentence of

 7    not less than twenty-five years, which would be

 8    consecutive to any sentence you receive on any other

 9    count.  You understand that?

10    A    Yes, sir.

11              THE COURT: Okay.  Now with that

12    understanding, do you still wish to maintain your plea

13    of guilty as I indicated earlier?

14    A    Yes, sir.

15              THE COURT: Now has anyone promised you

16    anything, or threatened you or threatened anyone else

17    in order to force you to reaffirm your plea at this

18    time?  Do you understand what I'm asking?

19    A    Yes, sir.

20              THE COURT: You're hesitating with your

21    answer.

22    A    Yes, I was.

23              THE COURT: What were you promised?

24    A    Well, I was threatened if I didn't take the plea

25    they would take my wife.
```

```
 1              THE COURT: Well other than the plea

 2     agreement, did anyone threaten you?

 3     A    No, sir.

 4              THE COURT: You know you can still have a

 5     trial.

 6     A    Right.

 7              THE COURT: But other than the plea agreement

 8     itself, did anyone threaten you or threaten anyone

 9     else?

10     A    No, sir.

11              THE COURT: Now with that understanding, do

12     you wish to reaffirm your plea in this case?

13     A    Yes, sir.

14              THE COURT: Okay.  Now I guess, then, the

15     issue comes down to whether count six should be

16     treated as a consecutive sentence.

17              MS. COOPER:  Yes, sir.

18              THE COURT: By the way, the Court does accept

19     the reaffirmation of his guilty plea.

20              It's now noon.  I hate to ask you to come

21     back, Miss Cooper, but considering the gravity of

22     this, I think we're going to have to come back at

23     one-thirty.  I'll let you know something about the

24     Deal matter.

25              MS. COOPER:  Thank you, Judge.
```

```
 1              THE COURT: Okay.

 2              (Whereupon, a recess was taken.)

 3              THE COURT:  Miss Cooper, would you come

 4  forward with the defendant.

 5              MS. COOPER:  Yes, sir.

 6              THE COURT: Miss Cooper, unfortunately this

 7  case presents a very difficult issue.  And as I'm sure

 8  you'd firmly agree, the amount of time we're talking

 9  about here is quite a lot.  It's twenty years.  There

10  is some circuit law to support your position, and

11  there is some circuit law to support the Government's

12  position on how to read Deal.  I'm just going to have

13  to take more time and digest this a little bit more.

14              I regret having to call you back, but I

15  think your client is entitled to have a more

16  thoughtful resolution of this issue.  And either way I

17  go, I suppose will go up to the Eleventh Circuit and

18  they will have to resolve it.  I'd rather have given

19  my best shot at it.

20              MS. COOPER:  Yes, sir.

21              THE COURT: If I was to rule against you, I

22  would strongly suggest that you appeal it.

23              MS. COOPER:  Certainly.

24              MS. REDMOND: Judge, if I may, for just a

25  moment?  In order to help the Court reach some
```

```
 1   resolution, I understand what the Court is saying that

 2   you want to take that into consideration.

 3        There is another case that the Government

 4   would like to provide, and it goes solely to the

 5   question of the understanding of second or subsequent

 6   convictions.  And I think in relation to the argument

 7   that the Defense is putting forward, that because when

 8   you're dealing with Deal and subsequent cases, you're

 9   dealing with counts that occurred on basically

10   separate offenses just now rooted together.  There is

11   a case, United States of America vs. Scyrus Dion

12   Hedert that we will submit to the Court.

13        Miss Cooper has had an opportunity to read

14   that case, and if the Court would allow, I'd like to

15   submit that for the Court's consideration.

16        THE COURT: Certainly.  Any time you have

17   some additional case authority I will gladly accept

18   it.

19        Let me ask you this just before we recess.

20   During the plea agreement was there any sort of

21   clarification as to the relationship between the drugs

22   and the business and the drugs at home?

23        In other words, and I'm trying to give an

24   example, you could have one package of drugs, let's

25   say, that you bought, and you split it in half, and
```

```
 1    you took half of it home and half you took to work, so
 2    we have one clear connection that we have one
 3    particular set of drugs that we're talking about, or
 4    you could have a drug situation in which you might
 5    have a marijuana operation growing out of your
 6    business and you might have a cocaine operation
 7    growing out of your home.  I'm using extremes,
 8    obviously.  And you could almost view the two
 9    instances as completely separate offenses, and any
10    guns connected to those offenses obviously could be
11    viewed as separate.
12          What I'm not getting here is a real feeling
13    for what connection, if any there was, or what lack of
14    connection, if any there was, here.  The question is
15    both ways.  And I don't know whether at the time of
16    the guilty plea or later there is any evidence that
17    would enlighten me on that.
18          MS. REDMOND: Judge, if I might?  It was, and
19    remains the Government's contention that, and I
20    understand that the Court is working with a lack of
21    information just due to the nature of the federal
22    proceedings in this case, the facts establish that the
23    defendant had driven -- the officers were doing
24    surveillance and had watched the defendant ride up
25    having left his home.
```

```
 1              And, remember, we're dealing with three
 2   separate sets of drugs; drugs at the home, drugs in
 3   the car, and drugs in the business, which the
 4   defendant never entered on that evening.  So we're
 5   dealing with -- and so that the Court is aware, I
 6   think the facts of the case establish that, and that
 7   this was part and parcel of the suppression hearing,
 8   that when the officers approached the vehicle, they
 9   smelled a strong smell of the chemicals used to cut
10   cocaine.  And in a bag was the cut cocaine.
11              So it is believed that having come from home
12   where there is additional powder cocaine, that the
13   defendant was in the process of -- that the cocaine in
14   the car came from the home, which is separate and
15   distinct since he never entered the business from the
16   drugs that are located along with the weapon.
17              THE COURT: Two things here.  The drugs in
18   the home are powder cocaine, is that correct?
19              MS. COOPER:  Yes, sir.
20              MS. REDMOND: Yes, sir.
21              THE COURT: And you're saying the drugs in
22   the car was going to be turned into crack, or
23   something like that?
24              MS. REDMOND: That is our belief.
25              THE COURT: The drugs in the business were
```

```
 1   what?

 2            MS. COOPER:  Residue, Your Honor.

 3            MS. REDMOND: We have marijuana and cocaine

 4   residue.

 5            THE COURT: Do you have marijuana in the

 6   home?

 7            MS. REDMOND: No.  There is no marijuana in

 8   the home.

 9            THE COURT: How much marijuana is in the

10   business?

11            MS. COOPER:  None, Judge.

12            THE COURT: I thought you said there was

13   marijuana.

14            MS. REDMOND: I thought there was, Judge.

15   Just a minute.

16            (Whereupon, Ms. Redmond examined various

17   documents at counsel table.)

18            THE COURT: Was he ever charged with

19   marijuana?

20            MS. COOPER:  No, Your Honor.  No, sir.

21            THE COURT: Well I'm still trying to look at

22   the totality of the circumstances.

23            MS. COOPER:  Additionally, Judge, we don't

24   believe there was any evidence presented during any of

25   the hearings in this matter that would lead a
```

```
 1  reasonable person to believe that Mr. Jefferson had

 2  recently come from his home prior to coming to the

 3  business.  That evidence was not admitted in court.

 4          THE COURT: Now there was a suppression

 5  hearing?

 6          MS. COOPER:  Yes, sir.

 7          THE COURT: That was before which magistrate

 8  judge?

 9          MS. REDMOND: Judge McPherson, Your Honor.

10          THE COURT: Did I rule on the suppression

11  motion?

12          MS. COOPER:  I believe so, Your Honor.

13          THE COURT: I don't think I had a subsequent

14  hearing on that.

15          MS. COOPER:  No, sir.

16          MS. REDMOND: No, sir, you adopted the

17  findings of the magistrate judge.

18          THE COURT: Is there any problem with my

19  considering that evidence also in resolving this?

20          MS. REDMOND: The Government would have no

21  objection.

22          MS. COOPER:  I'd have no objection.

23          THE COURT: I'll consider that transcript as

24  well.

25          Now getting back to the marijuana, was there
```

1    any marijuana in the business?

2            MS. REDMOND: I apologize, Your Honor.  Let

3    me go back for just a moment.  There was crack cocaine

4    located in the home, along with a digital scale.  And

5    I apologize, Your Honor, I don't know where it was in

6    my head marijuana.  There was cocaine residue in the

7    business.

8            THE COURT: Okay.  Only cocaine residue in

9    the business.

10           MS. COOPER:  That's my recollection, Judge.

11           THE COURT: Now where was the cocaine residue

12   found in the business?

13           MS. REDMOND: It was found in plastic bags in

14   the garbage can next to the shelf, for lack of a

15   better description, where the gun was located.  And

16   additional plastic bags.

17           THE COURT: Okay.  Was there any evidence

18   that the plastic bags found in the business were in

19   any way similar to plastic bags in the home, or

20   anything like that?

21           MS. REDMOND: I believe there wasn't any

22   evidence that was presented to Judge McPherson that

23   they had in any way, shape or form matched the bags

24   that were located.

25           THE COURT: In other words, is there any

```
 1   evidence that the drugs in the business may have come

 2   from the drugs in the home?

 3          MS. COOPER:  To my recollection, no, it was

 4   not presented.  No, sir.

 5          MS. REDMOND: No, sir, I would agree with

 6   that.

 7          THE COURT: Is there any way to find that

 8   out?  Did you ask the police officers these questions?

 9          MS. REDMOND: If the bags matched up in any

10   way?

11          THE COURT: Well, no.  More broadly, was

12   there any evidence that the drugs may have been -- the

13   drugs in the business may have had any relationship to

14   the drugs at home, or come from the drugs -- is there

15   any evidence of that one way or the other, even an

16   absence of evidence?

17          MS. REDMOND: Of course the Government's

18   contention would be that they were, in fact, selling

19   crack cocaine out of the business, which is why they

20   were doing surveillance on the business.  They had

21   several individuals who they had arrested who said

22   that they had bought from out of that business and

23   were selling on behalf of the defendant.

24          THE COURT: Okay.  And the crack in the

25   house, they were not selling it out of the house?
```

```
 1              MS. REDMOND: According to the information
 2    received from those arrested individuals, there was
 3    nothing that indicated that they were going to the
 4    house to get drugs to sell or to use.
 5              THE COURT: Anything else from Probation?
 6              THE PROBATION OFFICER:  No, Your Honor.  We
 7    rely on the case law we submitted and our arguments.
 8              THE COURT: Very good.  I'll let you know
 9    when sentencing is reset.
10              MS. COOPER:  Thank you, Your Honor.
11              THE COURT: Thank you very much.
12              MS. REDMOND: Your Honor, may I just make one
13    request?
14              THE COURT: Certainly.
15              MS. REDMOND: I will be out of the state as
16    of December 22nd.
17              THE COURT:  Let Miss Carnes know that so if
18    I inadvertently do that, she'll bring to it my
19    attention.
20              MS. REDMOND: Thank you Your Honor.
21              THE COURT: She's good at bringing things to
22    my attention.
23              You are excused.
24         (Whereupon, the proceedings were concluded.)
25
```

1                    * * * * * * * * * *

2

3              COURT REPORTER'S CERTIFICATE

4

5          I certify that the foregoing is a correct

6    transcript from the record of proceedings in the

7    above-entitled matter as prepared by me to the best of

8    my ability.

9

10         I further certify that I am not related to

11   any of the parties hereto, nor their counsel, and I

12   have no interest in the outcome of said cause.

13

14         Dated this 15th day of March 2004.

15

16

            MITCHELL   P.   REISNER,   CM, CRR,
17          Official US Dist. Court Reporter
            Registered Professional Reporter
18          Certified   Real-Time   Reporter

19

20

21

22

23

24

25