

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

FILED

FEB 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

UNITED STATES OF AMERICA )
)
v. ) CR. NO. 03-63-E
)
WENDELL KEITH JEFFERSON )
)

OPINION

Defendant Wendell Jefferson pled guilty to a six-count indictment, which charged him with two counts each of three federal statutes: 18 U.S.C.A. § 924(c) (possession of a firearm in furtherance of a drug trafficking offense or a crime of violence); 18 U.S.C.A. § 922(g) (felon in possession of a firearm); and 21 U.S.C.A. § 841(a) (possession of a controlled substance with intent to distribute). This criminal case is before the court on how Jefferson should be sentenced on the two counts of violating § 924(c), possession of a firearm in furtherance of a drug trafficking offense.

Section 924(c) provides for a sentence of not less than five years for the first conviction and an enhanced sentence of 25 years for a "second or subsequent conviction": "In the case of a second or subsequent conviction under this subsection, the person shall ... be sentenced to a term of imprisonment of not less than 25 years." 18 U.S.C.A. § 924(c).

54

At Jefferson's sentencing hearing on December 4, 2003, the question was presented of whether, when, as in Jefferson's case, there are two § 924(c) convictions and each is tied to a separate underlying drug offense which occurred simultaneously in separate places, one § 924(c) conviction must be treated as a "second or subsequent conviction" for the purpose of imposing an enhanced sentence. Sentencing was recessed so that the court could research this question.

For the reasons that follow, under the set of facts presented in this case, this court holds that it is required to treat one of Jefferson's § 924(c) convictions as subsequent to the other, and therefore apply an enhanced sentence, even though the two violations were committed simultaneously.

## I. FACTS

When arrested on December 6, 2002, Jefferson had been under investigation for approximately three months for suspected drug trafficking. He was arrested after agents searched his car, which was parked outside of a business owned by his wife, and found 497.81 grams of cocaine. Jefferson's wife consented to a search of her business, where agents found a gun under the front desk and plastic bags in the trash can

with suspected cocaine residue. Jefferson and his wife were then brought to the police station, where his wife consented to a search of the house she shared with Jefferson. The officers found a semi-automatic gun and a shotgun at the home, as well as 56.9 grams of cocaine base (crack cocaine).

Jefferson pled guilty to all counts of the six-count indictment, in exchange for assurance that his wife would not be prosecuted. As stated, two counts were for violations of § 924(c), which prohibits possession of a firearm in connection with a drug trafficking offense. The first § 924(c) count, according to the government, is for the firearm and cocaine residue found at the business, and the second is for the semi-automatic firearm and cocaine base found at Jefferson's residence.

In the presentence investigation report submitted to the court, the probation officer recommended five years for the § 924(c) violation relating to the drugs and firearm found at Jefferson's wife's place of business; the probation officer then counted the § 924(c) violation for the drugs and firearm found at Jefferson's home as a "second or subsequent conviction," and therefore applied an enhanced sentence of 25 years. These sentences would run consecutively, amounting to

a sentence of 30 years in addition to any other sentence Jefferson receives.[1] Jefferson objects to this calculation on the ground that the two § 924(c) violations were commited simultaneously and therefore one of them cannot be counted as a "second or subsequent conviction" to the other. For this reason, Jefferson contends, he is ineligible for an enhanced sentence and should be sentenced for each offense as if each were his first violation of § 924(c).[2]

## II. ANALYSIS

This case presents a difficult question, with serious consequences for Jefferson. At stake for Jefferson is, in all practicality, a life sentence--a punishment our legal system

---

1. According to the sentencing guidelines, Jefferson is also eligible for 78 to 97 months for two violations of 18 U.S.C.A. § 922(g) (felon in possession of a firearm), and two violations of 21 U.S.C.A. § 841(a) (possession of a controlled substance with intent to distribute).

2. If Jefferson's argument were accepted, his sentences under § 924(c) would amount to 15 years, to run consecutively to any other sentence he would receive. For the violation involving the gun and drugs at work, Jefferson would receive five years. For the violation regarding the guns and drugs at home, Jefferson would receive ten years, because the statute also has an enhanced penalty for semi-automatic weapons. 18 U.S.C.A. § 924(c)(1)(B)(i). Agents found a SWD M-11 9mm gun at Jefferson's residence, which is classified as a semi-automatic assault weapon.

normally reserves for society's most violent and serious offenders. What makes this case even more difficult is the tension that exists between the court's obligation to apply the law and its inability, in this case, to defend the justness of the result. However, because the Supreme Court has already addressed the question of the proper statutory construction of § 924(c) and, in particular, the meaning of "second or subsequent conviction," this court's duty is clear. Unless Congress chooses to clarify its intent, the Supreme Court's statutory interpretation is binding on this court.

The starting place for this court's analysis must be United States v. Deal, 508 U.S. 129, 113 S.Ct. 1993 (1993). In Deal, the defendant robbed six banks on six different days. The defendant challenged the imposition of multiple enhanced sentences under § 924(c), contending that because all six of his charges were in the same indictment, none was a "second or subsequent conviction." The Supreme Court rejected this argument and held that a "conviction" within the meaning of § 924(c) refers to a finding of guilt by a judge or a jury, and that one offense does not need to become final before another offense can be counted as a "second or subsequent offense" for purposes of imposing the enhanced punishment.

The government contends that Deal requires that this court impose an enhanced sentence for one of Jefferson's two § 924(c) convictions. Jefferson contends that the facts in Deal are distinguishable.

In Deal, the defendant committed six bank robberies on six different days. The Supreme Court reasoned that "simply because [the defendant] managed to evade detection, prosecution, and conviction for the first five offenses and was ultimately tried for all six in a single proceeding" does not mean that an enhanced sentence is "'glaringly unjust.'" Deal, 508 U.S. at 137, 113 S.Ct. at 1999.

In the instant case, Jefferson was arrested on the same day, December 6, 2002, for two separate stashes of drugs, and for two guns. One drug stash and a gun were at his wife's business, and the other drug stash and two guns were found at his home. Therefore, unlike the defendant in Deal, Jefferson did not commit subsequent crimes, for which he happened not to be caught; he possessed both sets of guns and drugs simultaneously. The reason he is receiving the enhanced sentence of 25 years is because he possessed two different types of drugs and because, by mere happenstance as far as this

court can tell, he kept his guns and his drugs in two separate places.

As the Eleventh Circuit Court of Appeals has implied, where the government links each gun count to separate counts for possession of drugs, multiple § 924(c) convictions are proper. Cf. United States v. Hamilton, 953 F.2d 1344 (11th Cir.) (holding that multiple § 924 convictions could not be sustained on only one predicate drug offense, even though the predicate offense was an ongoing conspiracy), cert. denied, 506 U.S. 1020, 113 S.Ct. 662 (1992). Jefferson was convicted for two separate counts of drug possession with intent to distribute--not one underlying drug conspiracy.[3] Furthermore,

---

3. Even if this court were faced with a challenge to the separate drug convictions as multiplicitous, such a challenge would not succeed. The vast majority of courts has allowed multiple § 841(a) counts to stand where each count is for a different type of drug or the drugs were in different locations. United States v. Vargas-Castillo, 329 F.3d 715, 720 (9th Cir.) (the "First, Second Fourth, Fifth, Sixth, Seventh, and Tenth Circuits have all held that charging a defendant with separate counts for different controlled substances is not multiplicitous and does not violate double jeopardy," because the language of 21 U.S.C.A. § 841(a)(1) specifically refers to "a" controlled substance, not "any" controlled substance, evidencing Congress's intent to make each controlled substance a unit of prosecution), cert. denied, 124 S.Ct. 504 (2003); see also United States v. Maldonado, 849 F.2d 522 (11th Cir. 1988) (a defendant may be convicted of two counts of violating § 841(a) on the same day for the same type of drug, when two (continued...)

it is clear that Jefferson was properly convicted of two separate gun charges.[4] Therefore, this court is not faced with a challenge to the two separate § 924(c) convictions; instead, Jefferson is simply challenging the interpretation of one of his § 924(c) convictions as "second or subsequent" to the other § 924(c) conviction and the resulting imposition of the 25-year enhanced sentence, when both offenses were commited simultaneously.

Courts that have directly examined challenges to enhanced sentences on the ground that the cases before them were

---

(...continued)
separate stashes, each of a different quantity, were found in two separate locations).

4. While the simultaneous possession of multiple, undifferentiated firearms, all possessed in the same place, cannot be the basis of separate gun convictions, United States v. Blakeney, 753 F.2d 152 (D.C. Cir. 1985) (weapons found in the same place at the same time constituted only one offense); United States v. Grinkiewicz, 873 F.2d 253 (11th Cir. 1989) (same); United States v. Szalkiewicz, 944 F.2d 653, 654 (9th Cir. 1991) (vacating multiple 18 U.S.C.A. § 922(g) convictions where "the jury made no finding of fact as to separate acquisition or possession...."), firearms simultaneously possessed in separate locations can support multiple 18 U.S.C.A. § 922(g) convictions. United States v. Bonavia, 927 F.2d 565, 569 (11th Cir. 1991) (a defendant can be convicted of multiple gun counts where there was evidence that the guns were separately possessed at some point in time); United States v. Hutching, 75 F.3d 1453, 1460 (10th Cir.) (allowing multiple counts based on the separate location of each firearm), cert. denied, 517 U.S. 1246, 116 S.Ct. 2502 (1996).

factually distinguishable from Deal have rejected such arguments and found Deal controlling. The Ninth Circuit Court of Appeals addressed this issue in United States v. Andrews, 75 F.3d 552 (9th Cir.), cert. denied, 517 U.S. 1239, 116 S.Ct. 1890 (1996). There, the defendant was charged with four underlying substantive crimes, occurring seconds apart, in relation to the murder and attempted manslaughter of four different victims. Defendant argued "that Deal is factually distinguishable, because in Deal the underlying predicate offenses occurred over a long period of time," whereas "[h]ere the underlying predicate offenses occurred virtually simultaneously." Id. at 558. Defendant asserted "that imposition of the enhanced penalty designed for repeat offenders makes no sense in a case like hers, where there was no time for her to reflect and understand the consequences of enhanced penalties for the 'subsequent' offense." Id.

The Ninth Circuit declined the invitation to distinguish Deal from cases that involve simultaneous crimes and held that three of the four § 924(c) violations could be treated as subsequent to the others. The court explained that, "Although there is much force to [defendant's] policy argument, it does not permit us to avoid the import of the Supreme Court's

unambiguous definition of 'second or subsequent conviction' in Deal." Id. "The fact," the court continued, "that 'section 924 sentences can produce anomalous results and will provide no additional deterrence ... cannot defeat the plain language of the statute.'" Id. (quoting United States v. Fontilla, 849 F.2d 1257, 1258 (9th Cir. 1988)).

The Ninth Circuit, therefore, found Deal binding, even while recognizing that the underlying policy argument used in Deal to justify multiple sentences does not extend to situations involving simultaneous crimes. The defendant in Deal, the Supreme Court reasoned, was a repeat offender, and therefore just as morally culpable as an individual who had already served a sentence; the defendant, according to the Court, did not deserve a lighter sentence just because he had evaded capture for his first five bank robberies. Deal, 508 U.S. at 136-37, 113 S.Ct. at 1998-99. Where offenses occur simultaneously, as the Ninth Circuit acknowledged, there is no time for a defendant to reflect on the consequences of his or her actions, and therefore such an individual is not as deserving as an individual who commits crime after crime; despite this, the Ninth Circuit found Deal controlling, as it is "not permit[ted] to avoid the import of the Supreme Court's

unambiguous definition of 'second or subsequent conviction' in Deal." Andrews, 75 F.3d at 558.

The Third Circuit Court of Appeals reached a similar conclusion in United States v. Casiano, 113 F.3d 420 (3rd Cir.), cert. denied, 522 U.S. 887, 118 S.Ct. 221 (1997), where it addressed the question of whether the § 924(c) enhancement is applicable to a second conviction that arises from the same criminal episode and involves the same victim. Defendants were convicted of kidnapping and carjacking, with § 924(c) convictions attached to each predicate offense. They argued that, because the underlying predicate crimes were committed in one continuous course of criminal conduct, these offenses should not form separate predicate crimes of violence for purposes of imposing two § 924(c) convictions.

The Third Circuit noted that, while it had not addressed this question before, "the language and reasoning of Deal ineluctably require rejection of this argument." Id. at 425. The court reasoned that, "Just as the Supreme Court in Deal declined to differentiate between convictions embodied in separate judgments and those embodied in separate charges in the same indictment, so also we cannot distinguish between criminal acts that occur over a period of time and/or affect

various victims and those that result from the same course of criminal activity and involve the same victim." Id. "Although there may be some force in defendants' argument," the court continued, "that the enhanced penalty under § 924(c)(1) serves little purpose in a case where the predicate act occurs simultaneously and where there is not time for defendants to reflect and understand the consequences of the 'second' convictions, ... the Supreme Court's unambiguous definition of 'second or subsequent conviction' in Deal compels our holding." Id. at 426.

Some courts have distinguished Deal from cases involving factual scenarios that are similar to the facts of Jefferson's case. However, these cases did not address challenges to the treatment of one count as subsequent to the other; instead, they addressed the separate question of whether simultaneous possession of two different types of drugs and two guns can constitute two separate offenses under § 924(c). See United States v. Johnson, 25 F.3d 1335 (6th Cir. 1994) (rejecting the idea that the legislature intended for an additional term to run consecutively for each firearm that could be linked to a drug conviction, and holding that the defendant could be convicted of only one violation of § 924(c) for simultaneous

possession of two sets of guns and drugs), rev'd on other grounds, 529 U.S. 53, 120 S.Ct. 1114 (2000);[5] see also United States v. Anderson, 59 F.3d 1323, 1325 (D.C. Cir.) (a defendant who was convicted of "two charges ... [that] involved simultaneous possession of weapons at two different locations," but was charged with only one underlying drug conspiracy, could not be given consecutive sentences under § 924(c)(1).), cert.

---

5. Despite the differences between the challenges to § 924(c) in Johnson and the question this court faces today, Johnson is illustrative of how § 924(c) can lead to arbitrary sentences by forcing courts to engage in an exercise in combinatorics (a branch of mathematics founded on the formulas for permutations and combinations), as opposed to an exercise in judgment. As the Johnson court noted:

> "The absurdity is that a defendant with one firearm and one marijuana joint, one rock of crack and one Dilaudid would receive fifteen years (or forty-five years, under the government's theory) for the gun in addition to the sentence on the drug charges, assuming the drugs were possessed with intent to distribute, while a drug kingpin with ten kilos of crack and the same firearm would only receive one five-year sentence, consecutive to his sentence for the drug offense."

25 F.3d at 1335. Similarly, if Jefferson had simply decided to carry all of his drugs on him, instead of bringing some to work and keeping some at home, he may have been able to successfully argue that he should be sentenced to only one count of violating § 924(c), as opposed to merely arguing that an enhanced sentence for the second § 924(c) conviction should not be imposed.

denied, 516 U.S. 999, 116 S.Ct. 542 (1995).[6] Because Jefferson has not challenged the propriety of imposing two separate sentences for his § 924(c) convictions, but instead contests only the imposition of a enhanced sentence, this court need not rule on the issues addressed in Johnson and Anderson at this time.

This court is sympathetic to Jefferson's challenge to the imposition of an enhanced sentence, as it seriously questions the wisdom of requiring simultaneous crimes to be counted as second or subsequent convictions under § 924(c). This court

---

6. Like the Sixth Circuit in Johnson, the court in Anderson also commented on the draconian nature of § 924(c), and questioned whether Congress would really choose to pen a statute containing such harsh penalties in an ambiguous manner:

> "Section 924(c)(1) provides very serious penalties for repeated violations. The first conviction requires a five-year sentence, and the second and succeeding violations call for 20 years each. Under the government's interpretation, then, three of four 'uses' or 'carries' during one underlying drug crime or crime of violence would, as a practical matter, bring a life sentence. If Congress had intended that result, we would of course honor the choice; but we think that if Congress had wished the statute to operate in that fashion, it would have used language making it obvious."

59 F.3d 1323, 1328.

believes the statutory language is ambiguous, at best, as to Congress's intent. If this were a matter of first impression, this court would be guided by the rule of lenity. United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 523 (1971) ("[B]ecause of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity. ... Thus, where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant."). The court would also normally be guided by the maxim: Interpretatio talis in ambiguis semper fienda est ut evitetur inconveniens et absurdum, that is, "In ambiguities, a construction should always be found such that what is unsuitable and absurd may be avoided." Black's Law Dictionary, 1647 (7th ed. 1999).

Lying beyond legal arguments about the proper application of cannons of statutory construction, however, is a more deeply troubling concern. The underlying policy rationale for applying the enhanced sentences in Deal simply does not make sense when applied to Jefferson's case. Unlike the punishments in Deal, Jefferson's multiple § 924(c) punishments are not based on sequential events, where Jefferson managed to evade

capture and enter into new criminal enterprises. Jefferson is far, far less culpable than an individual possessing multiple kilos of cocaine and an arsenal of firearms, who happens to store all the contraband in one place; he is far, far less culpable than an individual who uses multiple guns during an ongoing drug conspiracy. See, e.g., United States v. Anderson, 59 F.3d at 1325. Yet Jefferson will serve a significantly longer prison sentence than either of these defendants. Moreover, if Jefferson had simply decided to carry all of his drugs and guns on him, instead of bringing some to work and keeping some at home, there would be a strong legal argument for sentencing him to only one count of violating § 924(c). See United States v. Johnson, 25 F.3d 1335 (6th Cir. 1994), rev'd on other grounds, 529 U.S. 53, 120 S.Ct. 1114 (2000).

Any sensible sentencing scheme must bear a rational relationship to the defendant's crime; it must be based on something more than circumstances resulting from mere chance; in short, the scheme must be more than arbitrary. Otherwise, not only is a great injustice worked upon the individual defendant, but great damage is also done to the integrity of our system of justice. Section 924(c), as demonstrated above and applied here, fails this rationality test.

In addition, as amply demonstrated in United States v. Washington, Cr. No. 03-57-N, ___ F.Supp.2d ___ (M.D. Ala. February 2, 2004), a case where this court was recently forced to sentence a 22-year old with no criminal history to over 40 years for two violations of § 924(c), the current interpretation of the statute can lead to shockingly harsh and disproportionate sentences. In Washington, this court wrote:

> "If [Washington] gets time off for good conduct, he will be in prison until he is in his late 50s and, if he serves the entire sentence, until he is 62. In strictly monetary terms, his imprisonment will cost the taxpayers approximately $900,000, but the cost to him and to his family will be incalculable. His infant child will grow up without a father, and, before Washington is released, it is reasonably likely that his now-infant child will have his own children who will by then be in the difficult teenage years, if not approaching young adulthood, without their grandfather. Washington may be released before his death, but from the point of view of a 22-year old, 40 years is essentially a life sentence. Society generally reserves such harsh sentences for its most dangerous or incorrigible offenders, such as murderers and career offenders. This is because locking a young man away for his entire adult life does not serve a rehabilitative or deterrent function, as such a long sentence removes the incentive for reform and the hope that the prisoner will go on to live a productive life. As a punitive measure or a means of incapacitating Washington,

> Washington's sentence is grossly disproportionate to his crimes. While Washington broke the law and should be punished, even severely, a 40-year sentence is shockingly harsh given the nature of his offenses and his lack of criminal history. Indeed, this sentence is the worst and most unconscionable sentence the undersigned has given in his 23 years on the federal bench."

___ F.Supp.2d at ___ (footnote omitted).

This court is aware that the sentence it must give Jefferson is unjust, as was the sentence in Washington. However, this court is bound by the Supreme Court's holding that the term "subsequent conviction," as used in this statute, means a finding of guilt by a judge or jury, and nothing more, that is, regardless as to whether one count (and the underlying conduct) was actually simultaneous with, or subsequent to another count. Where the Supreme Court has directly ruled on a matter of statutory construction, this court must follow the Supreme Court's precedent. If application of the Supreme Court's holding produces anomalous and objectionable results, Congress may always amend the statute or the Supreme Court may reconsider.

## III. CONCLUSION

Jefferson will therefore be sentenced in accordance with this memorandum opinion. He will be sentenced for two separate violations of § 924(c), and will receive one five-year sentence for his "first" offense and the enhanced 25-year sentence for the "second or subsequent offense." Because he is also eligible for a range of 78 to 97 months[7] for the two violations of 18 U.S.C.A. § 922(g) (felon in possession of a firearm), and two violations of 21 U.S.C.A. § 841(a) (possession of a controlled substance with intent to distribute), this court will sentence him to a total of 438 months. This reflects a 78-month sentence under the sentencing guidelines, and 360 months for the two § 924(c) violations.

DONE, this the 3rd day of February, 2004.

MYRON H. THOMPSON
UNITED STATES DISTRICT JUDGE

---

7. Jefferson was initially eligible for a 108-135 month sentence under the sentencing guidelines (in addition to the sentences for the § 924(c) violations), as he has a criminal history category of III, and originally had an offense level of 29. The range of 78-97 months reflects the fact that the government has filed two motions for downward departure by the--one for substantial assistance and the other for acceptance of responsibility.