```
            IN THE UNITED STATES DISTRICT COURT
                          FOR
              THE MIDDLE DISTRICT OF ALABAMA




THE UNITED STATES
   OF AMERICA

         vs.                      CRIMINAL ACTION NO.
                                  03-CR-63
WENDALL JEFFERSON




                          SENTENCING



                    *  *  *  *  *  *  *  *  *  *



BEFORE:        The Hon. Myron H. Thompson

HEARD AT:      Montgomery, Alabama

HEARD ON:      March 17, 2004

APPEARANCES:   Susan R. Redmond, Esq.

               Connie Jo Cooper, Esq.
```

**MITCHELL P. REISNER, CM, CRR - (334) 265-2500**
**Total Computerized Litigation Support**

## Page 2

```
 1  WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
    THE HON. MYRON H. THOMPSON ON MARCH 17, 2004 AT THE
 2  UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:
 3
 4          THE COURT:  The Court calls the case of
 5  United States of America vs. Wendall Jefferson,
 6  criminal action number 03-63.
 7          Now, is this Mr. Jefferson?
 8          MS. COPPER:  Yes, Your Honor.
 9          THE COURT:  Bring him forward.
10          Now this is a continuation of
11  Mr. Jefferson's sentencing?
12          MS. COPPER:  Yes, sir.
13          THE COURT:  Mr. Jefferson, again, have you
14  reviewed the Presentence Report, including any
15  revisions that may have been made after the initial
16  disclosure?
17          MS. COPPER:  Yes, sir, we have.
18          THE COURT:  I understand you have filed a
19  motion to withdraw your guilty plea?
20          MS. COPPER:  That is correct, Your Honor,
21  and I have received a response from the Government.
22          THE COURT:  And what's the Government's
23  position now, do you oppose his withdrawal or not?  I
24  guess that's the bottom line.
25          MS. REDMOND:  Yes.  The Government does
```

## Page 3

1  object to the defendant's withdrawal of his guilty
2  plea.
3      MS. COPPER: Judge, may I speak?
4      THE COURT: Yes.
5      MS. COOPER: Judge, I have reviewed the
6  Government's response to our motion to withdraw the
7  guilty plea, and I am aware of the Court's I believe
8  four pronged test in determining whether my client is
9  allowed to withdraw his guilty plea.  I would like to
10 state to you, Your Honor, the Government is contending
11 that Mr. Jefferson had counsel throughout this
12 proceeding, and that is correct.  I have represented
13 him throughout these proceedings.
14     I would ask the Court to consider the
15 following in determining whether to allow
16 Mr. Jefferson to withdraw his guilty plea.  Number
17 one, Your Honor, although I did represent him
18 throughout these proceedings, it is clearly, in my
19 opinion, on the record that at the initial appearance
20 before the District Court, Mr. Jefferson was not
21 correctly apprised of this sentence that he was facing
22 under the second 924(c) conviction, that is a
23 twenty-five year consecutive mandatory sentence to any
24 other sentences that may be imposed.
25     Additionally, Judge, a shortcoming on my

## Page 4

1  part, I would ask the Court not to prejudice
2  Mr. Jefferson if I did not correctly apprise him of
3  that.
4      THE COURT: But I did apprise him of that.
5      MS. COPPER: Yes, sir.
6      THE COURT: I apprised him of that in open
7  court.  So I don't understand what the problem is,
8  then.
9      MS. COPPER: Well additionally, Judge, after
10 you issued your opinion and there was another issue
11 that was forthcoming, the issue of whether there could
12 be two sentences on the 924(c) for simultaneously
13 possessing different stashes of drugs.  And we had
14 mentioned that, Judge, in our motion to withdraw a
15 guilty plea, if the Court would consider that in the
16 event he does not allow Mr. Jefferson to withdraw his
17 guilty plea.
18     In addition, Judge, at the entry of the
19 change of plea, I believe it's on page twenty of the
20 Court's record, it is stated that for count four the
21 Government contends that his sentence would be five
22 years, and in count six that it's contending that it
23 would be ten years.  I would just ask the Court to
24 consider that in whether Mr. Jefferson had a full and
25 complete understanding when he entered into the guilty

## Page 5

1  plea.
2      THE COURT: What is he not understanding?
3  After I issued my opinion I think I went over with him
4  myself the implications of this twenty-five year
5  mandatory consecutive sentence.
6      MS. COPPER: I think it was before you
7  issued your opinion, Judge, and then after you issued
8  your opinion there were some other issues that came
9  out.
10     Additionally, the Court, I would point out
11 the case of Anderson in which possession of one or
12 more firearms involving simultaneous possessions of
13 drugs, the Court held could not be used -- both 924
14 convictions could not be used in those instances.
15     THE COURT: But still, again, though, what
16 is it that he doesn't understand?  The Court itself
17 explained to him the implications of sentencing in
18 light of his guilty plea and then he reaffirmed his
19 guilty plea.  I don't understand what it is he doesn't
20 understand.
21     MS. COPPER: Is it all right if
22 Mr. Jefferson speaks?
23     THE COURT: Yes.
24     THE DEFENDANT: Well, Your Honor, I pled
25 out.  The plea agreement was that I plead to the five

| Page 6 | Page 8 |
|---|---|
| 1  for the first count and ten for the second because it<br>2  was the semiautomatic weapon.<br>3         THE COURT: Say this again now?<br>4         THE DEFENDANT: The agreement was that I<br>5  pled to the first gun which was five years, and the<br>6  second would be ten because it was a semiautomatic<br>7  weapon.<br>8         MS. COPPER: It was not, Your Honor, until<br>9  we got Mr. Conly's report that we then were apprised<br>10 that it would be twenty-five year consecutive<br>11 sentence.<br>12        THE COURT: I understand that, but didn't we<br>13 go over that already at an earlier sentencing hearing,<br>14 and essentially cleared all this up and that I asked<br>15 him again if wanted to reaffirm his plea and he said<br>16 "Yes"?<br>17        MS. COPPER: Yes, sir.<br>18        THE COURT: So where is the problem? We've<br>19 already been through this. We clarified it for you<br>20 and then you reaffirmed your plea. You don't remember<br>21 doing that?<br>22        THE DEFENDANT: Yes, sir.<br>23        MS. COPPER: Yes, sir, he did.<br>24        (Whereupon, the Court examined said<br>25 transcript.) | 1  Court said that the fact that the defendant had a<br>2  change of heart prompted by his reevaluation of either<br>3  the Government's case against him or the penalty that<br>4  might be imposed, is not a sufficient reason to permit<br>5  withdrawal of a plea. And, Judge, there are other<br>6  cases along those lines.<br>7         The only other thing that the Government<br>8  would ask the Court to consider is the fact that the<br>9  Court can consider and should consider the totality of<br>10 the circumstances, and there are several factors and<br>11 they are not limiting to the Court. But one of the<br>12 things that the Court should consider, of course, is<br>13 the fact of the timing of the defendant's plea.<br>14        I would ask the Court to note that the<br>15 defendant did not file his motion to withdraw his<br>16 guilty plea until after the Court issued its opinion<br>17 in which it firmly states that this defendant, after<br>18 the Court had reviewed case law, that this defendant<br>19 would receive I believe a term of four hundred and<br>20 thirty-eight months. And it wasn't until after that<br>21 that the defendant brought this motion. And I would<br>22 ask the Court consider that.<br>23        THE COURT: What are you telling me? Why is<br>24 that important?<br>25        MS. REDMOND: It's important because of the |
| **Page 7** | **Page 9** |
| 1         THE COURT: Okay. Anything from the<br>2  Government on the motion to withdraw?<br>3         MS. REDMOND: Judge, the Government filed a<br>4  response to the defendant's motion to withdraw. In<br>5  addition, I had done some more research on the issue<br>6  of withdrawal of a guilty plea pursuant to Federal<br>7  Rule of Criminal Procedure 11(d). I don't know if the<br>8  Court would care to have that case law that I looked<br>9  at.<br>10        THE COURT: Go ahead.<br>11        MS. REDMOND: Judge, I had looked at U. S.<br>12 v. Ubakanma, and it's at 215 F.3d 421, in which it<br>13 discusses the District Court's not abusing its<br>14 discretion in refusing to prevent a defendant to<br>15 withdraw his guilty plea where the Court had conducted<br>16 a hearing prior to accepting the plea in which the<br>17 defendant acknowledged the factual stipulations<br>18 underlying his plea was true, stated that no one had<br>19 coerced him into pleading guilty and asserted under<br>20 oath that he understood the terms of the plea<br>21 agreement. That he understand the maximum sentence<br>22 and rights being waived by his guilty plea after they<br>23 were reviewed with him by the Court.<br>24        U. S. v. Grimes, 225 F.3d 254, in which --<br>25 and that was a case in which the defendant -- the | 1  timing of it. And what it goes to, Judge, is the<br>2  cases that I was just talking about. This defendant,<br>3  and I think it's clear, the Court went through this<br>4  with this defendant, assuming that there were initial<br>5  problems with the defendant's understanding of his<br>6  possible maximums and minimums, the Court went<br>7  through, the defendant affirmed that he did indeed<br>8  wish to plead guilty. At that time the defendant had<br>9  before him not only the revised presentence<br>10 investigation report, but also the proposed or the<br>11 recommended sentence by the probation officer.<br>12        Once he had affirmed, Your Honor, the Court<br>13 asked or shared with counsel that the Court wanted to<br>14 do its own study of the law as applicable in this<br>15 case. The Court then issued, I believe a week, maybe<br>16 later, maybe a little bit longer, its opinion in which<br>17 it states what it will give the defendant based on the<br>18 Court's findings. It is only after that time that the<br>19 defendant files a motion to continue the sentencing<br>20 that the Court had then set and then after that time<br>21 files for the motion to withdraw. And I think it<br>22 relates to the fact the defendant doesn't like the<br>23 sentence he is going to receive.<br>24        I think that is not, and I think the courts<br>25 have said, that that is not a good enough reason to |

Page 10

1 allow a defendant to withdraw his guilty plea.
2     One other thing I'd like the Court to
3 consider, Your Honor. If this defendant should be
4 permitted to withdraw his guilty plea, the Government
5 obviously will withdraw from the plea agreement. We
6 will indict his wife, Jennifer Hawk, and I think it
7 just should be noted that the Court's resources as
8 well as the Government's resources will be used in
9 that matter.
10    Miss Hawk is looking at, for the most part,
11 the same amount of time that this defendant is looking
12 at. She is the sole provider for their infant child,
13 and that is one of the reasons the defendant entered
14 into the plea agreement initially, was to protect his
15 wife from any charges brought by the Government and
16 any conviction thereof. She is also looking at
17 additional charges based on allegations of being the
18 purchaser of those weapons.
19    THE COURT: The Government wouldn't be
20 prejudiced, wouldn't it? There are no witnesses that
21 have now absconded or evidence that had been spoiled
22 or anything like that?
23    MS. REDMOND: I will say this, Judge. I do
24 believe that the Government may be prejudiced in the
25 fact that a plea was taken in July of 2003, and at

Page 11

1 that time there were confidential informants and there
2 are confidential informants who are no longer
3 confidential. They were provided to the Defense over
4 I believe two years ago. And I do believe that the
5 Government will be prejudiced as to their testimony in
6 this matter.
7     Thank you, Your Honor.
8     MS. COOPER: Your Honor, as to the
9 Government's contention that the main motivation for
10 my client attempting to withdraw his guilty plea is
11 the fact that he doesn't like his sentence, which we
12 would certainly disagree with that, Judge. Our
13 recollection, Judge, and I think as I pointed this out
14 previously to this Court, was the actual guilty plea
15 does not state that there will be a twenty-five year
16 consecutive sentence. At the conference, which
17 Mr. Conly was present, that information was not given
18 to my client. Five and ten years was.
19    So, Judge, I believe the substantive issue
20 is at the time of the entry of the guilty plea did my
21 client understand that he was facing a twenty-five
22 year consecutive --
23    THE COURT: But at the time of his
24 reaffirmation he did.
25    MS. COPPER: Yes, sir, and that was before

Page 12

1 you issued your opinion.
2     THE COURT: All the opinion said was what
3 the implications were of the plea, but I had already
4 told him before the opinion that he could be looking
5 at up to twenty-five years minimum sentence.
6     MS. COPPER: Yes, sir. And I did point out,
7 Judge, at the time that the Presentence Report came
8 down, I did write a letter indicating my objections to
9 that, to the twenty-five year sentence, based on the
10 fact that that was not my client's understanding. So
11 I did convey that to Probation and to the Government.
12    And, Judge, of course in your opinion you
13 pointed out, as I said before, two other cases which I
14 believe would assist my client if in the event another
15 plea agreement were drafted --
16    THE COURT: What do you mean "two other
17 cases"?
18    MS. COPPER: Well Johnson and Anderson,
19 Judge, the way your opinion read if I'm reading it
20 correctly, it's my belief because when we were in
21 court last I did not question the propriety of
22 imposing two sentences under 924(c) for possession of
23 firearms in conjunction with two different stashes of
24 drugs. And it appears in your opinion, if I'm reading
25 it correctly, based on the rulings in U. S. v. Johnson

Page 13

1 and U. S. v. Anderson, that it would be improper to
2 enhance by both guns based on two different stashes of
3 drugs being possessed simultaneously with those guns.
4 If I'm reading your opinion correctly, Your Honor.
5     MS. REDMOND: And, Judge, I certainly don't
6 mean to speak for the Court, but I believe what the
7 Court was sharing was that the difference between the
8 Anderson case and the case we have here is Anderson,
9 the underlying was the drug conspiracy. And I think
10 what the Court was saying is when you have the charge
11 of drug conspiracy, you cannot then, using the drug
12 conspiracy, bring two 924 charges. And I might be
13 reading that wrong, but that's my understanding.
14    Mr. Jefferson is not charged with
15 conspiracy. He is charged with two separate stashes
16 of drugs, as well as guns found near those two stashes
17 of guns (sic.) that the Government believes were used
18 in the relation to and in furtherance of the
19 possessions with intent to distribute as well as the
20 felon in possession of those weapons.
21    MS. COPPER: And, Judge, I believe that is
22 correct as far as U. S. v. Anderson, but it's my
23 understanding from the reading of U. S. v. Johnson
24 that the defendant in that case was convicted on more
25 than one count of possession of different controlled

Page 14

1 substances, and I do not believe that was a
2 conspiracy.
3      THE COURT: Well, anything else on the
4 withdrawal of the plea?
5      (Whereupon, there was no response.)
6      THE COURT: The Court has considered the
7 motion to withdraw, and it's standard that the Court
8 should apply, as set forth in Rule 11(d)(2)(b), which
9 provides that a plea may be withdrawn after the Court
10 accepts the plea but before it imposes sentence if the
11 defendant can show a fair and just reason for
12 requesting the withdrawal. Now the defendant has the
13 burden of demonstrating a fair and just reason for
14 withdrawal of the plea.
15      In United States v. Buckles, 843 F.2d 469, a
16 1988 decision, the Eleventh Circuit stated that while
17 a District Court should consider the totality of the
18 circumstances surrounding the plea, there are four
19 factors that a trial court should examine in
20 determining whether withdrawal should be allowed. The
21 four factors are whether close assistance of counsel
22 was available; whether the plea was knowing and
23 voluntary; whether judicial resources would be
24 conserved; and whether the Government would be
25 prejudiced if the defendant were allow to withdraw his

Page 15

1 plea.
2      Here, the first factor, whether close
3 assistance of counsel was available, is resolved in
4 paper by the Government here. There is no question
5 here that counsel was available throughout. Not only
6 was counsel available, but when a discrepancy arose
7 regarding what counsel had informed the defendant, the
8 Court itself stepped in to make sure that the
9 defendant understood the implications of his plea. In
10 this instance, counsel and the Court went through
11 extensive explanations with the defendant of what the
12 implications of his plea might be; that is, telling
13 him, after counsel may have misinformed him, that one
14 count could result in a consecutive mandatory sentence
15 of twenty-five years.
16      As to the second fact whether the plea was
17 knowing and voluntary, there is no question here that
18 the plea was knowing and voluntary. The defendant
19 appeared before the magistrate judge. The defendant
20 appeared before this Court. The defendant conferred
21 with his attorney. And as I said before, we all went
22 through an extensive process of making sure that he
23 knew what he was doing.
24      The third factor, whether judicial resources
25 would be conserved, I'm not quite sure what that

Page 16

1 means. Obviously, by entering into a plea the
2 Government would be saved the cost of having to try
3 the defendant, but that's true every time you enter
4 into a plea. There's nothing unique about that. At
5 best this factor, as far as I'm concerned, doesn't
6 weigh either way.
7      As to the fourth factor, whether the
8 Government would be prejudiced, I find no prejudice
9 here at all. There's been no spoilage of evidence,
10 and witnesses are available. What factor the Fifth
11 Circuit says that the Court should look at is whether
12 the defendant delayed in filing his withdrawal of the
13 motion, and that's a Fifth Circuit case of United
14 States v. Grant, 117 F.3d 782 at page 789. That's a
15 1997 case.
16      Here, I am troubled by the fact that this
17 withdrawal motion comes after the Court has indicated
18 essentially what the sentencing range might be. Not
19 the specifics of it because we still have some parts
20 of it to work out, but the Court has made some rulings
21 on the issues of sentencing.
22      Also, one factor would be whether the
23 defendant is claiming actual innocence. I don't hear
24 any claim of actual innocence here.
25      Having considered all these factors and the

Page 17

1 totality of the circumstances, the Court concludes
2 that the motion to withdraw should be denied and is
3 denied.
4      Now where are we with regard to sentencing,
5 what other issues do I need to address?
6      MS. COPPER: Judge, would you consider the
7 issues that I have brought forward?
8      THE COURT: What are those, now?
9      MS. COPPER: Number one, Judge, I was
10 somewhat troubled after looking back through the
11 Court's record, as well as your opinion which
12 indicated that one of the 924(c) enhancements outgrows
13 as a result of the cocaine residue which was found at
14 the wife's place of business, when in fact there was
15 no indictment forthcoming as far as that --
16      THE COURT: Say this again, now?
17      MS. COPPER: According to what I understand
18 as the Government's position, one of the 924(c)
19 enhancements is a result or arose out of the fact that
20 a weapon was found at the place of business. The only
21 drugs found at the place of business, it is my
22 understanding, was cocaine residue. That is troubling
23 to me as well as my client. That is one issue, Judge.
24      Another issue which I will ask the Court to
25 consider is whether Mr. Jefferson can be sentenced to

Page 18

1  two or more consecutive terms for violation of
2  924(c)(1) by possessing firearms while simultaneously
3  trafficking in two or more controlled substances, and
4  that's where you pointed out in your opinion the
5  rulings of U. S. v. Johnson and U. S. v. Anderson in
6  which it indicated, at least my understanding of your
7  opinion was, that there could not be two separate
8  enhancements based upon those facts.
9      THE COURT: Well let's take up your first
10 issue. Your first concern is that the drugs found at
11 the business were residue drugs, right?
12     MS. COPPER: Yes, sir.
13     THE COURT: Therefore your concern is
14 whether that can serve as a basis for a 924(c)(1)(a)
15 conviction?
16     MS. COPPER: Yes, sir.
17     THE COURT: Just because it's residue rather
18 than --
19     MS. COPPER: Yes, sir, and because it's my
20 understanding that there has to be a relationship
21 between the actual drugs and the guns that the
22 Government is attempting to use as a basis for the 924
23 enhancement. That was my understanding.
24     THE COURT: Now first of all, why would I be
25 looking at this at the time of sentencing? He's

Page 19

1  already pled, hasn't he?
2      MS. COPPER: Yes, sir.
3      THE COURT: So he's already admitted through
4  his plea that there was a relationship between the gun
5  found at the place of business and any drugs. Why
6  should I be second-guessing that at the time of
7  sentencing?
8      MS. COPPER: Judge, the fact that he was not
9  indicted on the drugs is what concerns Mr. Jefferson.
10     THE COURT: I'm not following you, the fact
11 that he wasn't indicted.
12     MS. COPPER: He was not indicted on the
13 residue found at the business.
14     THE COURT: But he was charged with -- What
15 count are we talking about here?
16     MS. COPPER: It is count four of the
17 indictment.
18     THE COURT: Count four?
19     MS. COPPER: I believe so.
20     THE COURT: Count four says that, "On or
21 about the 6th day of December 2002 at Phenix City,
22 Alabama in the Middle District of Alabama the
23 defendant, Wendall Jefferson, knowingly used and
24 carried and possessed a firearm during and in relation
25 to and in furtherance of a drug trafficking crime, to

Page 20

1  wit, possession of cocaine with intent to distribute
2  cocaine." And you're saying he wasn't indicted on the
3  cocaine aspect of that?
4      MS. COPPER: Yes, sir, that's my
5  understanding.
6      MS. REDMOND: If I may, Your Honor, I
7  disagree fundamentally, I believe, with the position
8  of the Defense. It is the Government's contention,
9  Your Honor, and I believe that the record is clear,
10 that there are drugs in the business in the form of
11 trace elements found in baggies in the garbage can.
12 There are drugs found outside of the business that had
13 been driven up by the defendant. It is our
14 contention, and I think the facts or the record is
15 clear, that it is the belief of the Government that
16 that business is being used or was being used at that
17 time as a launching pad.
18     That is where the drug activity took place.
19 The Court asked us, in fact, at the last time -- at
20 the last sentencing hearing whether or not we had any
21 evidence that the house was being used to sell drugs
22 and we answered no. It is the business that is being
23 used. The gun is used in furtherance of the drug
24 trafficking crimes, specifically the drugs found in
25 the car as well as in the business. The drugs are at

Page 21

1  the business as well as in the business.
2      Judge, one more thing, and I don't think
3  Mr. Conly indicated it in his presentence
4  investigation report, and I don't believe I have
5  raised this before. One of the other issues that
6  appears and that supports the Government's contention
7  is that during the search of the vehicle driven by the
8  defendant, ammunition for pistols was also found,
9  which would relate to that nine millimeter which was
10 found in the business.
11     THE COURT: Okay. Anything else?
12     MS. COPPER: We don't recall the ammunition,
13 Judge, in my discovery.
14     THE COURT: Well, whatever. It does appear,
15 however, that the conviction for count four stands, to
16 the extent I guess that I'm reading the issue at the
17 sentencing stage. It sounds like you're collaterally
18 challenging the conviction, but it doesn't seem like a
19 sentencing issue.
20     What other sentencing issue do I have now?
21 You mentioned another one.
22     MS. COPPER: Well, Judge, the fact that in
23 your opinion --
24     THE COURT: What page?
25     MS. COPPER: It's on page -- I have it

Page 22

marked -- page fourteen, Judge.
   THE COURT: Okay.
   MS. COPPER: You stated that because Jefferson did not challenge the propriety of imposing two separate sentences for his Section 924(c) convictions, the defendant did -- but instead contests only the imposition of enhancements, this Court need not rule on the issues involved in Anderson and Johnson at this time.
   And, Your Honor, I'm procedurally improper for bringing those now, I apologize to the Court, but on discussion with Mr. Jefferson we decided to include those, that issue also, Your Honor.
   THE COURT: So you're challenging the propriety of imposing two separate sentences for the 924(c) conviction?
   MS. COPPER: Yes, sir.
   THE COURT: I'll hear from the Government.
   MS. REDMOND: Judge, the argument from the Government would be that courts have, and I won't say consistently because I believe that there have been some courts who have not necessarily followed suit, but the majority of courts have found that in cases where there are different stashes of drugs and different guns used in connection with those different

Page 23

stashes, and that the underlying substantive drug offenses are separate and distinct, that it would be proper for, and it is proper for, courts to sentence on those two separate counts.
   And I might be missing what the defendant is arguing. The defendant is arguing that a subsequent conviction after a first conviction at one sentencing is improper, then I have a different argument. And I'm not sure if that's what the Defense is arguing at this time. That within a sentencing, or within one indictment, that it is improper for the Court to sentence based on a subsequent conviction. If that is the argument that the Defense is making, then I think the Court has already made findings as to that in its opinion.
   MS. COPPER: Specifically, Judge, I would state that I believe it would be improper for the Government to charge two separate 924(c)(1) violations in a situation where a defendant is storing drugs at two different locations and placing a gun at each location.
   THE COURT: So you're really here again challenging his convictions, not the sentence, is what I seem to be hearing, is that correct?
   MS. COPPER: Yes, sir. If I'm improper, I

Page 24

apologize to the Court. I'm just trying to do everything I reasonably and honorably can do to assure that Mr. Jefferson receives fair and impartial treatment in this matter.
   THE COURT: Okay. As it ends up, Counsel, I have already looked at this issue as a part of the earlier issue.
   MS. COPPER: Yes, sir.
   THE COURT: And while I did cite the Johnson case claiming he wasn't making that type of contention, that is the defendant here wasn't making that kind of contention, the law of the circuit seems to be against him. The Eleventh Circuit precedent suggests that as long as the two stashes of drugs were spacially separated, two separate drug convictions can stand. And as long as the guns were possessed in separate places, multiple gun charges can stand as well.
   With regard to that last issue of the gun charges, I would cite the case of United States v. Bonavia, 927 F.2d 565, page 569. It's a 1991 Eleventh Circuit case.
   With regard to the issue of whether he can be charged with two separate stashes of drugs, the Court would cite the case of United States of America

Page 25

vs. Maldanado, 849 F.2d 522, a 1988 Eleventh Circuit case. And also the case of United States of America vs. Vaughn, 859 F.2d at page 86, a 1988 Eleventh Circuit case where the Court talks about how the drug transactions took place on separate days and separate places and so forth.
   I think I've essentially given you most of the cases, which unfortunately for you go against you. But there are actually many more, as well.
   Again, I'm not sure what the posture of that claim is because it really doesn't give the sentencing, but nonetheless let's proceed to sentencing. What are some of the sentencing issues.
   Probation, do you know what other issues I need to look at at this time that have not been resolved already?
   THE PROBATION OFFICER: Your Honor, the Probation Office is not aware of any objection to the Presentence Report that the Court has not ruled on. The Probation Office is not aware of any other issues at this time.
   THE COURT: Have I ruled on everything that needs to be ruled on?
   MS. COPPER: As far as I'm aware, Your Honor.

**Page 26**

1   THE COURT: Okay. May I have a proposed
2 sentence, then.
3        Now the Government has also filed a motion
4 for downward departure, is that correct?
5        MS. REDMOND: Yes, sir, as well as a -- that
6 was a 5K motion for three levels downward departure as
7 well as a motion for acceptance of responsibility, the
8 third point.
9        THE COURT: So your three level downward
10 departure would reduce his offense level from a
11 twenty-nine to a twenty-six, is that correct?
12        THE PROBATION OFFICER: Yes, Your Honor.
13        THE COURT: So because we're looking at a
14 mandatory minimum on count six, he's to get three
15 hundred months there to run consecutive to the other
16 counts, correct?
17        THE PROBATION OFFICER: Yes, Your Honor.
18 With the three level downward departure, the
19 defendant's total offense level would be twenty-six
20 with a criminal history category of three, would
21 establish a guideline sentencing range of
22 seventy-eight to ninety-seven months. The defendant
23 would then be required by statute to be sentenced to a
24 term of sixty months on count four and three hundred
25 months on count six, to be served consecutive with

**Page 27**

1 each other and with the other remaining counts.
2        THE COURT: So how does a downward departure
3 help him?
4        THE PROBATION OFFICER: Well, because before
5 the downward departure, Your Honor, the defendant's
6 guideline range, his offense level was twenty-nine,
7 criminal history category three, his range was a
8 hundred and eight to a hundred and thirty-five months.
9 So it effectively reduced his sentence for the low end
10 of thirty months, Your Honor.
11        THE COURT: Okay. So you're recommending
12 ninety-seven months?
13        THE PROBATION OFFICER: I'm recommending the
14 high end of the guideline range, Your Honor, based on
15 the defendant's --
16        THE COURT: And that high end would be
17 ninety-seven for counts one, two, three and five and
18 sixty months for count four and three hundred months
19 for count six.
20        THE PROBATION OFFICER: That is correct.
21        THE COURT: So the benefit comes from the
22 reduced ninety-seven months.
23        THE PROBATION OFFICER: Yes, Your Honor.
24 The original offense level would be twenty-nine. His
25 range was a hundred and eight to a hundred and

**Page 28**

1 thirty-five. It's reduced to from seventy-eight to
2 ninety-seven now.
3        THE COURT: Right.
4        What's the Government's position?
5        MS. REDMOND: As to the recommendation, Your
6 Honor?
7        THE COURT: Yes.
8        MS. REDMOND: Judge, I'm not sure that I'm
9 aware of the probation officer's reasons --
10        THE COURT: He's recommending ninety-seven
11 months rather than seventy-eight months.
12        MS. REDMOND: Yes, sir, I understood him to
13 say that, and I did not understand him to say why he
14 was recommending the ninety-seven months.
15        THE COURT: Why are you recommending
16 ninety-seven months?
17        THE PROBATION OFFICER: Yes, Your Honor. As
18 the recommendation points out, this defendant has had
19 several prior convictions of violent felonies. If the
20 Court will remember, back in 1991 he carried a pistol
21 to a school when he was approximately thirteen. When
22 he was also thirteen he was convicted of manslaughter
23 in the juvenile court of Russell County when the
24 defendant killed his twenty-nine year old cousin.
25        Subsequent to that, the defendant has a

**Page 29**

1 continued criminal history extending to 1999 when he
2 was convicted of a first degree assault and another
3 manslaughter where the defendant carried a handgun
4 into a bar and a fight broke out and the defendant
5 shot two people. One of them died, and the other was
6 seriously injured. The defendant's criminal history
7 did not then merit to continue the theft of services
8 conviction out of the superior court of Masovia (ph.)
9 County in Columbus, Georgia, Your Honor.
10        This defendant has had a significant
11 criminal history, but has done relatively little time
12 incarceration. But I do not feel that the sentences
13 the state courts have imposed on him in the past has
14 had an effect on him. This defendant, after being
15 released from incarceration, reinvolved himself in the
16 serious drug trafficking trade when he was found to be
17 in possession at the time of his arrest of almost a
18 half kilo of cocaine and inside a business had a
19 weapon.
20        The defendant continued to carry weapons
21 along with drugs, one of the weapons being what is
22 defined as a semiautomatic assault weapon, the most
23 serious weapons that can be taken into account under
24 our laws. And based on that, the Probation Office is
25 recommending a sentence of ninety-seven months.

Page 30

1  MS. REDMOND: The Government would concur
2  with the recommendation of Probation.
3  THE COURT: Now the three level downward
4  departure for cooperation, was that by agreement or
5  what?
6  MS. REDMOND: No, sir.
7  THE COURT: Why should I go three levels,
8  then?
9  MS. REDMOND: Judge, as I set out in my
10  motion, and I would not like to make a complete record
11  or if the Court would wish that I would ask that it be
12  in camera, the defendant has provided information that
13  has and is assisting particularly officers in the
14  Phenix City area with ongoing investigations as to
15  violations of not only state but federal drug
16  trafficking crimes as well as gun crimes.
17  THE COURT: Anything else from the
18  defendant?
19  MS. COPPER: Mr. Jefferson would like to
20  address the Court, Your Honor.
21  THE COURT: Okay.
22  THE DEFENDANT: Based on Mr. Conly's
23  identification concerning the P. S. I. and my past,
24  well the only thing about 1997, the conviction of
25  that, because they really couldn't determine the depth

Page 31

1  of what happened to the guy in the bar. We were from
2  out of town. We was pinpointed for doing the crime.
3  Only I was arrested in the incident, and I pled guilty
4  to the charges because a lot of people pointed
5  fingers.
6  With the theft of services, I was on a truck
7  with a guy who worked in a disco, got in a fight and I
8  got caught with the truck.
9  And everything else, Your Honor, I'm leaving
10  my wife and my two year old son based on a lot of
11  lies. I'm guilty but, you know, I was told once
12  something and was given something else. I mean, why?
13  If it was straight up from the beginning I would have
14  no problems with that.
15  THE COURT: The Court will now announce the
16  proposed sentence. I'll give you another opportunity
17  to make comments before I decide whether to impose the
18  sentence as announced.
19  Having made findings to the objections to
20  the Presentence Report, the Court finds that the
21  offense level is twenty-nine, the criminal history
22  category is three, the guideline range for counts one,
23  two, three and five is from one hundred and eight to
24  one hundred and thirty-five months.
25  The authorized sentence for count four is

Page 32

1  not less than sixty months.
2  The authorized sentence for count six is not
3  less than three hundred months.
4  The authorized term of supervised release
5  for counts one and two is two to three years.
6  The authorized term of supervised release
7  for counts four and six is from three to five years.
8  The authorized term of supervised release
9  for count three is three years.
10  The authorized term of supervised release
11  for count five is five years.
12  The fine range is from fifteen thousand to
13  five million dollars.
14  The Court finds that the Government's motion
15  for downward departure pursuant to 5K1.1 based on the
16  defendant's substantial assistance to the Government
17  should be granted. The guideline level is twenty-six.
18  The new fine range is twelve thousand five hundred to
19  five million dollars. The new guideline range is
20  seventy-eight to ninety-seven months.
21  Pursuant to the Sentencing Reform Act of
22  1984 it is the order, judgment and decree of the Court
23  that the defendant, Wendall Jefferson, is committed to
24  the custody of the Federal Bureau of Prisons to be
25  imprisoned for a total term of four hundred and

Page 33

1  thirty-eight months. The term consists of
2  seventy-eight months on counts one, two, three and
3  five, sixty months on count four to be served
4  consecutively to all other counts, and three hundred
5  months on count six to be served consecutively to all
6  other counts.
7  It is further ordered that the defendant
8  shall pay to the United States District Court Clerk a
9  special assessment fee of six hundred dollars, which
10  is due immediately. Furthermore, because of his
11  inability to pay, the Court waives the imposition of a
12  fine.
13  It is further ordered that upon release from
14  imprisonment the defendant shall be placed on
15  supervised release for a term of five years. The term
16  consists of three years on counts one and two and
17  three, along with five years on counts four, five and
18  six, all such terms to run concurrently. Furthermore,
19  within seventy-two hours of release from custody the
20  defendant shall report to the probation office in the
21  district to the which he is released.
22  It is further ordered that while on
23  supervised release the defendant shall comply with the
24  mandatory and standard conditions of supervised
25  release on file with the Court.

Page 34

1    The Court also orders the following special
2 conditions. The defendant shall participate in
3 substance abuse testing and treatment as directed by
4 his supervising probation officer. He shall
5 contribute to the cost of any treatment based on his
6 ability to pay and the availability of third party
7 payments. He shall submit to a search of his person,
8 residence, office and vehicle pursuant to the search
9 policy of this Court.
10    The Court finds that there is no
11 identifiable victim who incurred a financial loss as a
12 result of this offense.
13    The sentence is imposed at four -- Yes?
14    THE PROBATION OFFICER: Your Honor, there is
15 no need to read that next paragraph. When the Court
16 sentenced to the lower end of the range, I deleted
17 that.
18    THE COURT: That's true.
19    I ask you at this time are there any
20 objections to the sentence imposed or to the manner
21 which the Court pronounced it, other than those
22 objections previously stated for the record? For
23 example, do you have any objection to the Court's
24 ultimate findings of fact and conclusions of law?
25 Furthermore, you are instructed that if you have an

Page 35

1 objection, you must not only state the objection, you
2 must give the grounds for the objection.
3    MS. COPPER: Your Honor, I have no objection
4 to the Court's reasoning and imposition of the
5 sentence as stated. For the record, Judge, I would
6 state that as the Court's opinion stated, I believe
7 that it is an arbitrary and unjust sentencing scheme,
8 and based upon that, Judge, I feel that my client's
9 fundamental civil rights have been violated.
10    THE COURT: You've raised several other
11 objections that go to the conviction itself.
12    MS. COPPER: And I have nothing further,
13 Your Honor.
14    THE COURT: I assume you will be appealing?
15    MS. COPPER: Yes, Your Honor.
16    THE COURT: Very good. You should appeal.
17    I ask you, do you have anything to say as to
18 why the sentence as announced should not be imposed or
19 do you have anything to say in mitigation of the
20 sentence?
21    MS. COPPER: No, Your Honor.
22    THE COURT: It is the order, judgment and
23 decree of the Court that the sentence as announced is
24 hereby imposed.
25    Now you have ten days to file any Notice of

Page 36

1 Appeal. If you cannot afford the cost of an appeal,
2 the Court will allow you to appeal at no cost,
3 including furnishing you with a free transcript and a
4 free attorney.
5    The defendant is now in the custody of the
6 marshal.
7    MS. REDMOND: Excuse me, Your Honor, there
8 was a forfeiture allegation, and I believe that has
9 been submitted to the Court.
10    THE COURT: Do I have any form on that?
11    MS. REDMOND: I believe that has been
12 submitted to the Court by Mr. John Harmon of our
13 office.
14    THE COURT: Let's see --
15    MS. COOPER: It's my understanding we had an
16 agreement regarding the forfeiture.
17    MS. REDMOND: I don't see one. May I
18 forward that to the Court at a different time?
19    THE COURT: Yes, you can get that to me
20 later. That will be fine. You have no objections to
21 the forfeiture?
22    MS. COPPER: No, Your Honor.
23    THE COURT: Okay. Court's in recess, then.
24    (Whereupon, the proceedings were concluded.)
25          * * * * * * * * * *

Page 37

COURT REPORTER'S CERTIFICATE

    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter as prepared by me to the best of my ability.

    I further certify that I am not related to any of the parties hereto, nor their counsel, and I have no interest in the outcome of said cause.

    Dated this 10th day of May 2004.

    _____
    MITCHELL P. REISNER, CM, CRR,
    Official US Dist. Court Reporter
    Registered Professional Reporter
    Certified Real-Time Reporter