# CORRECTED    [DO NOT PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE ELEVENTH CIRCUIT

---

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 16, 2004
THOMAS K. KAHN
CLERK

No. 04-12174
Non-Argument Calendar

---

D.C. Docket No. 03-00063-CR-T-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WENDALL JEFFERSON,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Middle District of Alabama

---

(December 16, 2004)

Before ANDERSON, BIRCH and FAY, Circuit Judges.

PER CURIAM:

Wendall Jefferson directly appeals his total 438-month sentence for two counts of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) ("Counts 1 & 2"); one count of possession with intent to distribute cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) ("Count 3"); one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) ("Count 5"); and two counts of possession of a firearm in connection with the drug-trafficking offenses charged in Counts 3 and 5, in violation of 18 U.S.C. § 924(c)(1) ("Counts 4 & 6"). Jefferson argues that the district court abused its discretion in denying Jefferson's motion to withdraw his plea because (1) Jefferson did not understand the consequences of his plea, and (2) his plea was coerced. Jefferson also contends that the court erred in sentencing him to a mandatory minimum consecutive 25-year sentence for a second or subsequent § 924(c)(1) offense, when Jefferson simultaneously possessed the firearm forming the predicate offense for this enhancement. For the reasons set forth more fully below, we affirm Jefferson's convictions and sentences.

A federal grand jury returned a superseding indictment, charging Jefferson with the above-referenced offenses of conviction. At Jefferson's initial appearance, the magistrate judge advised him that, if he was convicted on Counts 4 or 6, his "maximum punishment" was "the same," that is, not less than five

2

years. In lieu of trial, Jefferson entered into a plea agreement, whereby he agreed to plead guilty to all counts in his indictment in exchange for the government agreeing not to indict his wife, Jennifer Hawk, for conduct arising out of the superseding indictment. The potential statutory penalties listed in this agreement for Counts 4 and 6 were five years' imprisonment.

Furthermore, during Jefferson's change-of-plea hearing, the magistrate again advised him on the statutory penalties for these charges, including that (1) Jefferson faced a minimum sentence of five years' imprisonment on Counts 4 and 6; (2) these sentences would run consecutively to each other and to his other counts; and (3) if the government proved that the firearm used in Count 6 was a semi-automatic weapon, Jefferson's mandatory minimum statutory sentence on that count would be ten years' imprisonment. Jefferson also confirmed that he understood that, by pleading guilty, he was waiving certain constitutional rights. Concluding that (1) Jefferson was competent and capable of entering an informed plea; (2) he was aware of the nature of his charges and the consequences of the plea; (3) his plea was knowing and voluntary, and (4) a factual basis supported his plea, the magistrate recommended that the court accept Jefferson's plea. After the court received no objections to this recommendation, it accepted it and adjudicated Jefferson guilty as charged.

3

Prior to sentencing, a probation officer prepared a presentence investigation report ("PSI"), which included, in relevant part, that, as part of an undercover investigation, law enforcement agents learned that Jefferson was using his wife's business, "Head to Toe Studios," to store, process, and sell cocaine base. As part of a consensual search of this business, the agents recovered a 9mm pistol loaded with two 30 round magazines under the front desk, and three plastic bags containing suspected cocaine residue in the trash can in the rear of the business. Moreover, as part of a same-day consensual search of the residence shared by Jefferson and Hawk, the agents recovered a loaded 9mm semiautomatic assault weapon with an extra 32-round magazine next to it, a double barrel 20-gauge shotgun, and a clear plastic bag containing 56.9 grams of cocaine base. Hawk told an agent that she purchased these firearms for Jefferson's benefit, because he was a convicted felon.[1]

Based on these facts, the probation officer calculated Jefferson's total offense level as 29, his criminal history as III, and his resulting guideline range as 108 to 135 months' imprisonment. The probation officer, however, noted that, pursuant to U.S.S.G. § 2K2.4, the guideline sentences for Counts 4 and 6 were

---

[1]   The prosecutor testified at a hearing on Jefferson's suppression motion that, until Jefferson executed his plea agreement, the government intended to charge Hawk for her criminal conduct of purchasing these firearms.

4

consecutive 60-month sentence and 300-month sentences respectively.[2] Jefferson

objected to this last recommendation, explaining that, in pleading guilty, he relied

on the plea agreement's statement that a violation of Count 6 (his second § 924(c)

offense) carried a mandatory minimum consecutive sentence of five years'

imprisonment. The probation officer replied that Count 6 carried a consecutive

300-month sentence because, pursuant to Deal v. United States, 508 U.S. 129, 113

S.Ct. 1993, 124 L.Ed.2d 44 (1993), it was a second or subsequent § 924(c)

conviction.

At Jefferson's first sentencing hearing, he renewed his objection to the

probation officer's recommendation that the court find that Count 6 was a second

or subsequent § 924 conviction. Jefferson argued that Count 6 should not be

considered a second or successive conviction because he simultaneously

committed the conduct charged in Count 4, the predicate offense for this

enhancement. Jefferson contended that the facts in Deal were distinguishable

because Deal involved six separate robberies on six separate dates, while

Jefferson's convictions stemmed from his simultaneous possession of weapons.

---

[2]    Absent exceptions that are not applicable in this appeal, "[i]f the defendant, whether
or not convicted of another crime, was convicted of violating section 924(c) or section 929(a) of
[T]itle 18, United States Code, the guideline sentence is the minimum term of imprisonment
required by statute. Chapters Three and Four shall not apply to that count of conviction." See
U.S.S.G. § 2K2.4(b).

Moreover, he asserted that, because his plea agreement provided that both Counts 4 and 6 carried mandatory minimum consecutive sentences of five years' imprisonment, he misunderstood his actual potential statutory penalties.

Nevertheless, when the court asked Jefferson whether he wished to withdraw his plea of guilty, Jefferson responded negatively. Indeed, Jefferson affirmed under oath that he (1) understood false statements could lead to perjury charges; (2) was not under the influence of drugs or alcohol; (3) could read and write; (4) was not suffering from a mental or physical disability; (5) understood that Count 6 of his indictment carried a potential consecutive sentence of not less that 25 years' imprisonment; and (6) had not been promised anything or threatened in exchange for his plea, other than what was contained in the plea agreement.[3] Morever, Jefferson's counsel agreed that Jefferson was competent to reaffirm his plea. The court then accepted Jefferson's reaffirmation of his plea, and it recessed the hearing to consider the parties' arguments on enhancement.

The court subsequently entered an order, explaining that it intended to find that Jefferson's § 924(c) conviction in Count 6 was a second or subsequent conviction. The court explained that one offense need not become final before

---

[3]   In agreeing that his plea had not been motivated by other promises or threats, Jefferson explained that the government had threatened to "take his wife" if he did not plead guilty. He, however, confirmed that he understood he still could have a trial, and that he wished to plead guilty.

6

another offense can be counted as a second or subsequent offense for purposes of

imposing an enhanced § 924(c) sentence. The court further explained that,

although Jefferson, unlike the defendant in <u>Deal</u>, simultaneously possessed the

relevant drugs and firearms, he possessed them in separate locations. The court

also stated that we had at least implied that, when the government links each gun

count to separate counts for possession of drugs, multiple § 924(c) convictions are

proper.[4] The court concluded, as such, that Jefferson was convicted properly of

two separate gun charges and that the question, therefore, was whether his

conviction in Count 6 was second or subsequent. Moreover, although the court

outlined persuasive authority from other circuits rejecting a finding of second or

subsequent conviction under similar facts, and although the court noted its concern

that Jefferson's resulting sentence would be unjust, it determined that it was bound

by the Supreme Court's holding in <u>Deal</u> that a subsequent conviction is a finding

of guilty by a judge or jury, regardless of whether one count was committed

simultaneously with the other count.

Approximately one week before the court reconvened his sentencing,

Jefferson filed a motion to withdraw his plea. Jefferson contended that his plea

---

[4]    Determining that it was not faced with a "challenge to the separate drug convictions as multiplicitous," the court, nevertheless, determined that such a challenge would be unsuccessful because each count was for a different type of drug and involved drugs at different locations.

was not voluntary and knowing because he was advised as part of his initial hearing, plea agreement, and change-of-plea hearing that his mandatory minimum consecutive sentence for Count 6 was five years' imprisonment, instead a mandatory minimum consecutive sentence of 25 years' imprisonment. Jefferson concluded that, because the court's intended sentence would result in a life sentence for him, a denial of his motion would result in a "manifest injustice."

When the court then reconvened Jefferson's sentencing hearing, he renewed his motion to withdraw his plea. In doing so, Jefferson again argued that, although he was represented by counsel throughout the proceedings, both the court and his counsel advised him incorrectly on his mandatory minimum sentences.

The government responded that a district court does not abuse its discretion in denying a motion to withdraw a plea when (1) it has determined, after conducting a hearing, that the plea was knowing and voluntary, or (2) when the defendant's reason for the motion is to avoid a particular sentence. The government also again stated that, if the court granted Jefferson leave to withdraw his plea, additional judicial resources would be expended because the government would indict Jefferson's wife for the same offenses. Finally, the government asserted that it would be prejudiced by such a ruling because confidential informants ("CIs"), who were witnesses in the case, no longer were confidential.

The court denied Jefferson's motion to withdraw his plea. The court did not find that preserving judicial resources was a relevant factor in this case, or that the government would be prejudiced by the granting of the motion. Nevertheless, it determined that (1) counsel was available throughout the proceedings; (2) the court informed Jefferson on his potential statutory penalties; (3) the court ensured, through a lengthy hearing at Jefferson's first sentencing hearing, that Jefferson's reaffirmation of his plea was free and voluntary; (4) Jefferson only made his motion after the court informed him of its intended sentence; and (5) Jefferson was not claiming that he was innocent.

Jefferson then renewed his objection to the court treating his conviction in Count 6 as a second or subsequent conviction. In doing so, Jefferson argued for the first time that his indictment improperly charged him with two separate § 924(c)(1) offenses because they were based on the same underlying conduct. Noting that sentencing was an improper venue to raise such a challenge, the court, nevertheless, discussed and affirmed its reasons for sua sponte rejecting such a challenge in its previous sentencing order. The court then adopted the PSI's calculations on Jefferson's guideline ranges. After departing downward three levels for Counts 1, 2, 3, and 5, pursuant to U.S.S.G. § 5K1.1, the court ultimately sentenced Jefferson to 78 months' imprisonment on Counts 1, 2, 3, and 5; a

9

consecutive 60-month sentence on Count 4; and a consecutive 300-month

sentence on Count 6, with his total term of imprisonment equaling 438 months.

ISSUE 1:   <u>Motion to withdraw guilty plea</u>

As discussed above, Jefferson is arguing that the court abused its discretion

in denying his motion to withdraw his guilty plea because his plea was not

knowing and voluntary. In support, Jefferson contends that both the government

and the court assured him that he would not be subject to more than a ten-year

consecutive sentence for his second § 924(c). Jefferson also argues for the first

time that, although the court subsequently advised him that his second § 924(c)

offense would carry a mandatory minimum 25-year consecutive sentence, and it

gave him an opportunity to withdraw his plea, the government coerced him into

not withdrawing it by threatening to indict his wife for the same offenses.

We review the denial of a request to withdraw a guilty plea for abuse of

discretion. <u>United States v. Freixas</u>, 332 F.3d 1314, 1316 (11th Cir. 2003). Thus,

in reviewing a court's refusal to permit the withdrawal of a guilty plea, we defer to

the court's application of criteria set forth below, and we only will reverse if the

court's ultimate conclusion is "arbitrary or unreasonable." <u>Id.</u> at 1318. On the

other hand, to the extent a defendant fails to object in the district court to a

violation under Fed.R.Crim.P. 11, our review is only for plain error. <u>United States</u>

10

v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003).  Under plain-error review, the

defendant must show that (1) there is error, (2) the error is plain, (3) the error

affects substantial rights, and (4) the error seriously affects the fairness, integrity,

or public reputation of judicial proceedings.  Id. (internal quotations and marks

omitted).

Pursuant to Fed.R.Crim.P. 11(d), a court may permit a defendant to

withdraw his plea before the court imposes sentence for a "fair and just reason."

Fed.R.Crim.P. 11(d)(2)(B).  In determining whether a defendant has shown a "fair

and just reason," the court "evaluates the totality of the circumstances, including

'(1) whether close assistance of counsel was available; (2) whether the plea was

knowing and voluntary; (3) whether judicial resources would be conserved; and

(4) whether the government would be prejudiced if the defendant were allowed to

withdraw his plea.'"  Freixas, 332 F.3d at 1318 (quotation omitted).  Furthermore,

"when a district court accepts a guilty plea, it must ensure that the three core

concerns of [Rule 11] have been met: (1) the guilty plea must be free from

coercion; (2) the defendant must understand the nature of the charges; and (3) the

defendant must know and understand the consequences of his guilty plea."  Id.

(internal quotation and marks omitted).  "[T]here is no absolute right to withdraw

a guilty plea prior to imposition of a sentence." United States v. Weaver, 275 F.3d 1320, 1328 n.8 (11th Cir. 2001) (interpreting former Fed.R.Crim.P. 32(e))..

### a.    Whether Jefferson understood the consequences of his plea

To the extent Jefferson is raising a challenge to his plea under the third "core" concern of whether a defendant knows and understands the consequences of his plea, the court must inform the defendant of any mandatory minimum penalty provided by law. United States v. Clark, 274 F.3d 1325, 1330 (11th Cir. 2001). Indeed, a court's failure to inform a defendant of a mandatory minimum sentence prior to accepting a guilty plea is reversible error, absent evidence that the defendant, otherwise, knew that he was facing a mandatory minimum sentence. United States v. Siegel, 102 F.3d 477, 481 (11th Cir. 1996).

In the instant case, the record reflects that Jefferson's plea agreement and the court, at Jefferson's initial and change-of-plea hearings, misadvised him on his mandatory minimum consecutive statutory sentence for Count 6 by indicating that it was either five or ten years' imprisonment. Nevertheless, after Jefferson reviewed the probation officer's recommendation in his PSI that this mandatory minimum sentence was 25 years' imprisonment, and after Jefferson argued that his initial plea was involuntary, he declined the court's offer to withdraw his plea. Moreover, before accepting Jefferson's reaffirmation of his plea, the court placed

him under oath and confirmed that he was competent to plead guilty, and that he understood the correct mandatory minimum penalty for Count 6. Thus, the court did not abuse its discretion in concluding that Jefferson understood the consequences of his plea and in denying his subsequent motion to withdraw his plea.

### b.    Whether Jefferson's plea was coerced

Furthermore, to the extent Jefferson is raising a challenge under the first core concern, "a finding of coercion need not depend upon actual violence by a government agent; a credible threat is sufficient." Stokes v. Singletary, 952 F.2d 1567, 1580 (11th Cir. 1992). "Where the defendant alleges that his guilty plea was induced by government threats to prosecute a third party and the government makes no effort to specifically deny that it made the threats, the defendant's prior attestation of voluntariness is not an absolute bar to his subsequent claim that he pleaded guilty only to protect the third party." Martin v. Kemp, 760 F.2d 1244, 1247-48 (11th Cir. 1985). Instead, the guilty plea "merely imposes upon the defendant a heavy burden to establish that the government did not observe a "high standard of good faith," based upon probable cause to believe that the third party had committed a crime." Id. at 1248; see also United States v. Gordon, 231 F.3d 750, 758 (11th Cir. 2000) ("[p]robable cause to arrest exists when law

13

enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime").

In <u>Martin</u>, a habeas petitioner argued that his confession and guilty plea were involuntary because they were prompted by police threats to bring charges against his young pregnant wife. <u>Id.</u> at 1248-49. We determined that, while probable cause existed at the time of Martin's plea hearing to file charges against his wife, it was unclear from the record whether the police had probable cause at the time they actually made the threats, and that remand was necessary for an evidentiary hearing. <u>Id.</u> On the other hand, in <u>LoConte v. Dugger</u>, 847 F.2d 745 (11th Cir. 1988), another habeas case, we determined that there was no evidence in the record to indicate the falsity of representations state officials made that the appellant's wife had been arrested, was being held in jail on murder charges, and would have her charges dropped if the defendant pled guilty. <u>Id.</u> at 752. Noting that there was, in fact, independent evidence in the record confirming these statements, we concluded that "[t]he fact that the appellant chose to enter a guilty plea in order to protect his wife does not undermine the voluntariness of the plea entered here." <u>Id.</u>

14

To the extent Jefferson is asserting that the court should have granted his motion to withdraw his plea because his plea was coerced by the government's threat to prosecute his wife, he informed the court during his reaffirmation of his plea at his sentencing hearing that he had been motivated by the government's threat to indict his wife for the same conduct. Nevertheless, Jefferson advised the court that he understood he could withdraw his plea and proceed to trial, and that he still wished to plead guilty. Thus, we review this claim only for plain error. See Monroe, 353 F.3d at 1349.

Here, the parties' plea agreement reflects that the government threatened to prosecute Jefferson's wife if he did not plead guilty; thus, Jefferson has the burden of showing that the government did not observe a "high standard of good faith," based upon probable cause to believe that the third party had committed a crime. See Martin, 760 F.2d at 1247-48. However, prior to plea negotiations, the government knew that the drugs and firearms were recovered from Jefferson's wife's business and the residence she shared with Jefferson. Moreover, Jefferson's wife informed law enforcement officers that she purchased these firearms. The prosecutor also testified that, before Jefferson executed his plea agreement, it intended to charge his girlfriend for her criminal conduct of purchasing these firearms. Accordingly, the record shows that the threats by law

15

enforcement to prosecute Jefferson's wife for these possession offenses were based on probable cause to believe that she possessed the relevant drugs. See Gordon, 231 F.3d at 758. Thus, the fact that Jefferson chose to plead guilty to protect his wife did not result in an involuntary plea, and no plain error resulted from the court's denial of Jefferson's motion to withdraw his plea. See LoConte, 847 F.2d at 752.

**ISSUE 2:** **Mandatory minimum consecutive 25-year sentence for a second or subsequent § 924(c)(1) offense**

Jefferson also argues that, under the rule of lenity, the court should have determined that his § 924(c) offense in Count 6—which he committed simultaneously with the conduct in his predicate § 924(c) offense in Count 4—did not constitute a second or subsequent conviction carrying a mandatory minimum consecutive sentence of 25 years' imprisonment. Jefferson concedes that the Supreme Court in Deal, determined that a § 924(c) enhancement normally does not require that the predicate conviction become final prior to the commission of the second or subsequent offense. Jefferson argues, nevertheless, that Deal is distinguishable because it involved a defendant who committed six violent offenses on six different dates. Moreover, Jefferson contends that the court only should have convicted him of one drug-trafficking offense and that he, therefore,

16

should not have been sentenced for possessing multiple firearm offenses in connection these offenses.

Section 924(c)(1)(A) mandates a punishment of five years' imprisonment for a defendant who, "during and in relation to any crime of violence or drug trafficking offense . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A). If a defendant has a second or subsequent conviction, this provision imposes a mandatory minimum sentence of 25 years' imprisonment. 18 U.S.C. § 924(c)(1)(C)(i). Moreover, "no term of imprisonment imposed for a person under [§ 924(c)] shall run concurrently with another term of imprisonment imposed on the person." 18 U.S.C. § 924(c)(1)(D)(ii). To the extent Jefferson is challenging the district court's statutory interpretation of § 924(c), our review is de novo. See United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004) ("[i]nterpretation of the Sentencing Guidelines is similar to statutory interpretations and is subject to de novo review on appeal").

In interpreting § 924(c)'s "second or subsequent" provision, in United States v. Rawlings, 821 F.2d 1543 (11th Cir. 1987), we concluded that the appellant's second conviction under § 924 legitimately triggered the statute's enhancement provision, even though it was predicated upon an offense charged in

17

the same indictment. Id. at 1545. In reaching this conclusion, we determined that the language of the statute and Congress' desire to deter and punish firearm use did not support the appellant's argument that he had to be convicted and sentenced under two separate indictments before the enhanced penalty became applicable. Id. at 1546. We also reasoned that an alternative holding would result in prosecutors charging defendants in separate indictments, and that such manipulation would add to the court's caseload and serve no useful purpose. Id.

The Supreme Court subsequently upheld this interpretation in Deal, which involved a challenge to the district court's imposition of consecutive enhanced sentences based on the petitioner's use of a gun while committing six bank robberies on different dates. Deal, 508 U.S. at 130, 113 S.Ct. at 1995. The Court discussed that the word "conviction" could mean either the finding of guilt or the entry of a final judgment on that finding. Id., 508 U.S. at 131, 113 S.Ct. at 1996. The Court, however, ultimately concluded that, "[i]n the context of § 924(c)(1), we think it unambiguous that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction." Id., 508 U.S. at 132, 113 S.Ct. at 1996. In reaching this conclusion, the Court noted the dissent's concern that "prosecutors [would] continue to enjoy considerable discretion in deciding how many § 924(c) offenses to charge in relation to a

18

criminal transaction or series of transactions." <u>Id.</u>, 508 U.S. at 134 n.2, 113 S.Ct. at 134.  It, nevertheless, determined that this discretion merely pertained to the prosecutor's "universally available and unavoidable power to charge or not to charge an offense." <u>Id.</u>

Here, a federal grand jury indicted Jefferson for committing two § 924(c) offenses.  Moreover, after the court advised Jefferson that his § 924(c) offense in Count 6 would constitute a second  or successive § 924(c) offense, he pled guilty to both offenses.  The court, in turn, accepted his plea.  Accordingly, the court did not err in concluding that Jefferson's § 924(c) offense in Count 6 was second or subsequent, even though it was charged in the same indictment as his predicate § 924(c) offense.

Furthermore, to the extent Jefferson's argument can be construed as a double-jeopardy challenge to his underlying drug-trafficking offenses, this argument also is without merit.  The Double Jeopardy Clause of the Fifth Amendment declares that no person shall "be subject to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  It "protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." <u>United States v. Thurston</u>, 362 F.3d 1319, 1322 (11th Cir. 2004) (quotation omitted).  Thus, "[a]n indictment is multiplicitous if it charges a single

offense in more than one count." United States v. Bonavia, 927 F.2d 565, 568 (11th Cir. 1991).

We normally review de novo, as a pure question of law, a possible violation of the Double Jeopardy Clause. Thurston, 362 F.3d at 1322. As discussed above, however, the government is contending that Jefferson waived his right to raise such a claim by pleading guilty to two separate offenses and by raising this claim for the first time at sentencing. Indeed, with limited exceptions, a plea of guilty and the ensuing conviction generally foreclose a collateral attack on the conviction, other than a claim that the underlying plea was not counseled or voluntary. United States v. Kaiser, 893 F.2d 1300, 1302 (11th Cir. 1990).[5]

Nevertheless, we need not determine whether Jefferson waived this claim because, regardless of this procedural issue, no error occurred. Whether multiple charges constitute one offense turns on whether each charge "requires proof of an additional fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932). In United States v. Fiallo-Jacome, 784 F.2d 1064 (11th Cir. 1986), we determined that a two-count

---

[5]    As discussed by the Supreme Court in Blackledge v. Perry, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and Menna v. New York, 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975), these exceptions deal primarily with infirm proceedings, wherein the government had no power to prosecute a second charge. See United States v. Broce, 488 U.S. 563, 574-76, 109 S.Ct. 757, 765-66, 102 L.Ed.2d 927 (1989).

indictment that charged § 841(a)(1) violations was multiplicitous when one count of the indictment charged a continuous possession of cocaine during a three-month period, and the other count charged possession of an isolated amount that had been taken from and included in the amount charged in the first count. Id. at 1066-67.

On the other hand, in United States v. Maldonado, 849 F.2d 522 (11th Cir. 1988), we concluded that no double jeopardy violation resulted when the defendant was convicted for two counts of simultaneous cocaine possession, which were charged in the same indictment, when the first count charged possession of an amount in one county and the other count charged the possession of a separate amount in a different county. Id. at 524-25. Similarly, in United States v. Vaughn, 859 F.2d 863 (11th Cir. 1988), we denied the defendant's double-jeopardy claim when the defendant was charged with five separate possessions of quantities of cocaine of varying purities on different dates and no count charged an amount that was included in a different charge. Id. at 865.

In this case, although the predicate drug-trafficking convictions in Counts 3 and 5 of Jefferson's indictment were simultaneously committed, they involved different types and amounts of drugs, that is, trace amounts of cocaine hydrochloride and 56.9 grams of cocaine base. Moreover, these drugs were recovered from two separate locations, that is, the business owned by Jefferson's

21

wife and the residence shared by Jefferson and his wife. Therefore, similar to the circumstances in <u>Maldonado</u> and <u>Vaughn</u>, Jefferson's convictions on both of these offenses did not result in a double-jeopardy violation. <u>See</u> <u>Maldonado</u>, 849 F.2d 524-25; <u>see also</u> <u>Vaughn</u>, 859 F.2d at 865.[6] Thus, Jefferson's § 924(c) offenses were based properly on two separate drug offenses, and the district court did not err in sentencing Jefferson to a mandatory minimum consecutive sentence of 25 years' imprisonment on his second § 924(c) offense.

We conclude that the district court did not commit reversible error in (1) denying Jefferson's motion to withdraw his guilty plea, or (2) sentencing Jefferson to a mandatory minimum consecutive 25-year sentence for a second or subsequent § 924(c)(1) offense. We, therefore, affirm Jefferson's convictions and total 438-month sentence.

**AFFIRMED.**

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

---

[6]    As the government notes in its brief, we recently determined in <u>United States v. Clay</u>, 355 F.3d 1281 (11th Cir.), <u>petition for cert. filed</u>, No. 03-10810 (U.S. June 1, 2004), that a defendant's simultaneous possession of two separate caches of cocaine base, in two different locations, constituted a single offense. <u>See</u> <u>id.</u> at 1284. Our determination in <u>Clay</u>, however, is distinguishable because <u>Clay</u> involved the review of a court's aggregation of separately-possessed quantities of the same type of drug, and for the purpose of determining whether a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(ii) was applicable. <u>See</u> <u>id.</u> at 1284-85.

22